Compensation Appeals Board
No. 97-269

APPEAL OF PAUL RAINVILLE

(New Hampshire Compensation Appeals Board)

June 21, 1999

*Kalled Law Offices*, of Ossipee (*John P. Kalled* on the brief and orally), for the petitioner.

*Bouchard & Mallory, P.A.*, of Manchester (*Christine Friedman* and *Lynmarie Cusack* on the brief, and *Ms. Friedman* orally), for the respondents, Glen Builders, Inc. and Royal Insurance Company.

HORTON, J. The petitioner, Paul Rainville, appeals the decision of the New Hampshire Compensation Appeals Board (board): (1) allowing his insurance carrier to suspend payment of physical therapy expenses while its appeal to the board was pending; (2) denying his claim for medical treatment expenses; and (3) denying his claim for a scheduled permanent impairment award. We affirm in part, reverse in part, vacate in part, and remand.

The petitioner, a construction worker employed by Glen Builder's, Inc. (employer), suffered injury after operating a jackhammer over a two-week period in November 1993. He experienced upper body pain, neck pain, tremors, diaphoresis, headaches, anxiety, hoarse voice, and numbness in his arms. Except for a brief period as a supervisory foreman in early 1994, the petitioner has ceased all gainful employment and has been receiving temporary total disability payments since April 1994.

During the three years following his injury, the petitioner saw numerous medical professionals and underwent a myriad of tests and procedures, resulting in various diagnoses. In December 1994, Dr. David Nagel, his primary physician since July 1994, diagnosed multifocal myofascial pain syndrome with multiple sympathetic phenomenon and recommended physical therapy. The employer's insurance carrier, Royal Insurance (carrier), paid for the initial two rounds of physical therapy but refused to pay for subsequent therapy.

In November 1995, Dr. Nagel concluded that the petitioner had reached maximum medical improvement and that future improvement was unlikely. Referring to the AMA GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (4th ed. 1993) (AMA GUIDES), Dr. Nagel calculated an eighteen percent impairment of the whole person.

In January 1996, the petitioner submitted to the carrier's request for an independent medical examination. Dr. Kenneth O'Neil conducted the examination and concluded that the petitioner suffered from chronic pain syndrome unrelated to his November 1993 injury. Dr. O'Neil disputed Dr. Nagel's finding of permanent impairment based on the AMA GUIDES and found that further physical therapy was unnecessary.

Based on Dr. O'Neil's evaluation, the employer requested a hearing with the department of labor (DOL) to review the petitioner's eligibility for disability benefits under RSA 281-A:48 (Supp. 1997) (amended 1998). In addition, the petitioner requested a hearing concerning his unpaid physical therapy bills, *see* RSA

281-A:23 (Supp. 1998), and his eligibility for a permanent impairment award, see RSA 281-A:32 (Supp. 1998).

After a hearing held on June 7, 1996, the DOL hearing officer determined that the petitioner's condition was directly related to his November 1993 injury and that no changes had occurred to warrant a reduction or termination of his benefits. The hearing officer also determined that the petitioner's physical therapy treatments were reasonable and necessary. She denied, however, the claim for a permanent impairment award, citing Dr. Nagel's failure to explain his calculations adequately. The hearing officer ordered the carrier to continue payment of temporary total disability benefits and to pay for the petitioner's physical therapy bills and related travel expenses.

Both parties appealed to the board. While the appeal was pending, the carrier refused to pay the petitioner's physical therapy expenses, and the petitioner protested. The DOL hearing officer concluded that the carrier was not obliged to make payments for medical expenses pending appeal unless the original hearing officer had expressly ordered payment "regardless of appeal as specified in RSA 281-A:43, II [(Supp. 1998)]."

In January 1997, the board ordered the carrier to continue temporary total disability payments and denied the petitioner's appeal for a permanent impairment award. It reversed the hearing officer's determination that the petitioner's physical therapy treatments had been reasonable and necessary. Further, it refused to require the carrier to pay the petitioner's physical therapy expenses that had accrued while the appeal was pending. The petitioner then moved for rehearing, asserting the carrier's obligation to pay the accrued physical therapy bills, challenging the board's finding that the physical therapy had been unreasonable and unnecessary, and requesting a determination of whether Dr. Nagel's medical treatments were reasonable and necessary under RSA 281-A:23. The motion was denied, and the petitioner appealed to this court.

This court subsequently issued a decision addressing, inter alia, whether the board erred in denying payment of Dr. Nagel's medical expenses. The carrier moved for reconsideration, arguing that since the petitioner had not raised the issue of Dr. Nagel's medical bills before the hearing officer it was not properly before this court on appeal from the board. The motion was granted and the decision has been withdrawn.

*I. Payments Pending Appeal*

On appeal, the petitioner initially argues that the board erred in failing to enforce the DOL hearing officer's order that the carrier pay the petitioner's physical therapy expenses. The employer contends that since the board overturned the hearing officer's finding that the physical therapy was reasonable and necessary, the issue is moot. Even if the issue were not moot, the employer argues that we should defer to the DOL's administrative policy that non-indemnity benefits be suspended pending an appeal to the board. Finally, the employer asserts that RSA 281-A:43, II permits payment of non-indemnity benefits pending an appeal only if the DOL hearing officer so orders.

First, the issue is not moot. The question is whether the carrier was obliged under the hearing officer's order to pay the petitioner's medical expenses up to the time of the board's decision. The board's subsequent decision that the medical treatments at issue were not reasonable or necessary does not absolve the carrier from its duty to pay for medical expenses accruing up to the time of the board's decision. *Cf. Hartford Accident & Indem. Co. v. Duvall,* 113 N.H. 28, 30-31, 300 A.2d 732, 734 (1973).

We address the employer's second and third arguments together. An administrative agency must "comply with the governing statute, in both letter and spirit." *Appeal of Morin,* 140 N.H. 515, 519, 669 A.2d 207, 209 (1995). Even a "long-standing administrative interpretation of a statute is irrelevant" if that interpretation clearly conflicts with express statutory language. *N.H. Retirement System v. Sununu,* 126 N.H. 104, 109, 489 A.2d 615, 619 (1985). Here, the governing statute is the Workers' Compensation Law, which we construe liberally, "resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to its remedial purpose." *Appeal of Lalime,* 141 N.H. 534, 537-38, 687 A.2d 994, 997 (1996) (brackets omitted).

RSA 281-A:43 governs the conduct of hearings and administration of awards. RSA 281-A:43, II states in pertinent part:

> Payment of weekly compensation and entitlement to medical and vocational benefits, if necessary and so ordered by the commissioner, shall begin or continue as soon as possible, but no later than 5 working days after the decision's effective date, and shall not be terminated except in accordance with the terms of the decision or of a final court determination.

We construe a statute according to the plain and ordinary meaning of the words used. *See Milette v. N.H. Retirement System*, 141 N.H. 342, 345, 683 A.2d 531, 532-33 (1996). Nothing in RSA 281-A:43, II indicates that a carrier may suspend payment of medical benefits pending appeal absent a contrary order from the DOL hearing officer. *Cf. Duvall*, 113 N.H. at 30, 300 A.2d at 734 (interpreting predecessor provision to mandate payment of indemnity payments regardless of appeal). Rather, RSA 281-A:43, II requires payment of weekly compensation and entitlement to medical and vocational benefits, if ordered by the hearing officer, to begin within five days after the effective date of the decision. *See* R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 13.03 (2d ed. 1993); *cf. Duvall*, 113 N.H. at 30, 300 A.2d at 734. It plainly states that payment of benefits shall not be terminated except as provided by the hearing officer's order or a final court determination. *See* RSA 281-A:43, II.

Furthermore, RSA 281-A:43, I(b) (Supp. 1998) governs the status of awards pending an appeal. It states in pertinent part: "Upon the filing of an appeal the board shall, within 6 weeks hold a full hearing on the appeal; but, *in no case shall such an appeal suspend the operation of an award* unless the hearing officer from which the appeal was taken shall so order." RSA 281-A:43, I(b) (emphasis added). The statute does not define "award." *See* RSA 281-A:2 (Supp. 1998). But, consistent with the remedial purpose of workers' compensation, we construe "award" in RSA 281-A:43, I(b) to include both medical benefits and indemnity payments. *Cf. Carbonneau v. Company*, 97 N.H. 438, 441, 91 A.2d 449, 451 (1952) (provision for remedial care was "intended to preserve to the employee the benefit of compensation without substantial reduction for medical or hospital expense").

■ RSA 281-A:43, I(b) clearly states that an appeal to the board does not suspend the obligation to pay an award unless the hearing officer so orders. Accordingly, a stay must be requested by the carrier or employer and granted by the hearing officer. Neither occurred in this case, and the carrier was therefore obligated to pay the petitioner's physical therapy bills until the board ruled otherwise. The board thus erred as a matter of law in failing to enforce the hearing officer's order to pay the petitioner's physical therapy expenses accruing to the date of the board's decision reversing the hearing officer. We reverse and remand for a determination of the amount of award to which the petitioner is entitled in order to cover his physical therapy bills.

*II. Payment of Medical Bills*

The petitioner contends that the board erred in failing to find that his physical therapy and Dr. Nagel's medical treatment were reasonable and necessary.

We first address whether the petitioner's expenses for Dr. Nagel's treatment is properly before this court. The carrier denied payment of Dr. Nagel's medical bills in October 1996, four months after the DOL hearing officer issued her decision. In his appeal to the board, the petitioner sought a ruling on the carrier's denial of Dr. Nagel's bills. The board refused to rule on the issue, and the petitioner raised the issue on his appeal to this court. The carrier argues that absent an agreement between the parties, the board may review only issues that were raised in the DOL hearing being appealed. We agree.

"The board's *de novo* review of department of labor workers' compensation decisions is limited to issues raised in the department of labor proceedings being appealed." *Appeal of Staniels*, 142 N.H. 794, 796, 709 A.2d 1325, 1326 (1998) (brackets omitted). Issues must be specifically raised. Because of the breadth and complexity of the workers' compensation statutory scheme, limiting the issues reviewable by the board ensures that parties can reasonably anticipate the issues for which they must prepare evidence and argument. *See Leccacorvi v. N.H. Workers' Comp. Commission*, 135 N.H. 91, 94, 601 A.2d 165, 167 (1991). Even related issues, if they arise subsequent to the DOL hearing, must be decided in the first instance by a DOL hearing officer. *See Staniels*, 142 N.H. at 796, 709 A.2d at 1326. We thus decline to address the issue of payment for Dr. Nagel's treatment, without prejudice, however, to a separate workers' compensation action, procedurally unrelated to the case before us, in which the petitioner has sought payment for Dr. Nagel's treatment.

We turn now to whether the board erred in finding that the petitioner's physical therapy was unnecessary and unreasonable. Except for errors of law, we shall not set aside or vacate a decision of the board, unless we are convinced by a clear preponderance of the evidence that the order is unjust or unreasonable. RSA 541:13 (1997). We will not disturb the board's findings of fact "if they are *supported by competent evidence in the record upon which the board's decision reasonably could have been made.*" *Appeal of Kehoe*, 141 N.H. 412, 415, 686 A.2d 749, 752 (1996) (citation omitted).

The medical professionals who examined the petitioner disagreed as to whether his physical therapy was effective. Dr.

Nagel, whose opinion the board characterized as "vacillating," and Dr. Ralph Beasley approved continuing the therapy, while Dr. Victor Gennaro and Dr. O'Neil recommended its termination. In addition, the board considered the lack of support for further therapy from Dr. Christopher Martino and Dr. Deborah Poskanzer. As the trier of fact, the board may disregard in part or in whole an expert's testimony when faced with conflicting expert testimony. *Appeal of Newcomb*, 141 N.H. 664, 668, 690 A.2d 562, 565 (1997). Here, faced with the conflicting testimony, the board reasonably could have discounted the opinions of Dr. Nagel and Dr. Beasley. Accordingly, we affirm the board's finding that the physical therapy expenses were unreasonable and unnecessary.

*III. Permanent Impairment Award*

Lastly, the petitioner maintains that the board erred in denying his claim for a scheduled permanent impairment award under RSA 281-A:32, IX, which provides in relevant part:

> If an injury results in more than one permanent bodily loss specified in paragraphs I-VIII, or if the injury is to the spinal column or the spinal cord, an award shall be made on the basis of a maximum of 350 weeks with the appropriate number of weeks to be determined in proportion to the maximum in accordance with the percent of the whole person specified for such bodily losses in the most recent edition of "Guides to the Evaluation of Permanent Impairment" published by the American Medical Association.

The petitioner first alleges that the board acted contrary to the terms of RSA 281-A:32, IX by basing its denial solely on the lack of a spinal injury. In denying the award, the board stated that "the medical records do not indicate the claimant has suffered a spinal injury that is compensable under the statute." It also ruled, however, that the petitioner was not entitled to an award based on the eighteen percent impairment rating given by Dr. Nagel. Although the board could have more fully stated the grounds for its decision in its order, we cannot say that it failed to consider both of the bases provided by statute for a permanent impairment award.

Since the petitioner does not dispute the board's finding that he did not suffer a compensable spinal injury, we turn to the petitioner's second claim that the board erroneously dismissed Dr. Nagel's assessment of his permanent impairment. Dr. Nagel found that as a result of his myofascial pain, the petitioner had an approximately twenty percent loss of function of each shoulder, allowing for a

twelve percent impairment of each upper extremity, and a diagnosis-specific impairment of five percent secondary to neck pain. Combining these values according to the relevant table in the AMA GUIDES, Dr. Nagel concluded that the petitioner suffered an eighteen percent impairment of the whole person.

The employer contends that the board correctly rejected Dr. Nagel's evaluation because he failed to follow the AMA GUIDES as required by RSA 281-A:32, IX. During the hearing before the board, Dr. Nagel admitted that the AMA GUIDES does not refer to myofascial pain and that the petitioner did not have any of the listed physical conditions. Dr. Nagel testified that the AMA GUIDES "has a couple of sections that allow you to go outside . . . of [its] basic techniques of range of motion [to assess impairment]." The employer argues that Dr. Nagel erred by evaluating the petitioner under an injury not recognized by the AMA GUIDES and by failing to perform the proper tests to assess the petitioner's physical abilities.

Whether the statutory requirements of RSA 281-A:32, IX have been satisfied is a legal question, which we review *de novo*. *See Petition of Blackford*, 138 N.H. 132, 134-35, 635 A.2d 501, 502-03 (1993). RSA 281-A:32, IX mandates that the AMA GUIDES be used to calculate the percent of the whole person impaired as a result of multiple permanent bodily losses. In other words, it is the statute that governs whether a permanent impairment exists; the AMA GUIDES applies only to the determination of appropriate compensation for a permanent impairment. We therefore examine the AMA GUIDES to evaluate the legal sufficiency of Dr. Nagel's assessment.

We note that the AMA GUIDES expressly acknowledges it "does not and cannot provide answers about every type and degree of impairment" because of the "infinite variety of human disease," the constantly evolving field of medicine, and the complex process of human functioning. *See* AMA GUIDES § 1.3, at 3. Accordingly, the AMA GUIDES advises that a "physician's judgment and his or her experience, training, skill and thoroughness in examining the patient and applying the findings to GUIDES criteria will be factors in estimating the degree of the patient's impairment." *Id*. While this estimate "should be based on current findings and evidence," *id*. § 2.2, at 8, "[i]f in spite of an observation or test result the medical evidence appears not to be of sufficient weight to verify that an impairment of a certain magnitude exists, the physician should modify the impairment estimate accordingly, describing the modification and explaining the reason for it in writing." *Id*. The AMA GUIDES expressly allows a physician to deviate from the guidelines

if the physician finds it necessary to produce an impairment rating more accurate than the recommended formula can achieve.

This decision to use alternative methodology must, however, be grounded in adequate clinical information about the patient's medical condition. *See id.* § 1.2, at 3. Additionally, in order to allow a third party to compare reports properly, physicians must use a standard protocol in evaluating and reporting impairment. *See id.* ch. 2 Preface at 7. "A clear, accurate, and complete report is essential to support a rating of permanent impairment." *Id.* § 2.4, at 10. Within the report, an evaluating physician is expected to provide a full medical evaluation, analysis of the medical findings with respect to the patient's life activities, and comparison of the results of analysis with the impairment criteria. *See id.*

Hence, in view of the AMA GUIDES's own instructions and our liberal construction of RSA 281-A:32, IX, *see Appeal of Lalime*, 141 N.H. at 537-38, 687 A.2d at 997, we hold that if a physician, exercising competent professional skill and judgment, finds that the recommended procedures in the AMA GUIDES are inapplicable to estimate impairment, the physician may use other methods not otherwise prohibited by the AMA GUIDES. *Cf. City of Aurora v. Vaughn*, 824 P.2d 825, 827 (Colo. Ct. App. 1991) (where procedures in AMA GUIDES judged inapplicable to claimant's hearing loss, physician could properly rely on alternative reliable tests). The reasons for such a deviation must be fully explained and the alternative methodology set forth in sufficient detail so as to allow a proper evaluation of its soundness and accuracy.

█ We caution that our decision does not permit physicians or claimants to deviate from procedures simply to achieve a more desirable result. To satisfy the statutory requirements of RSA 281-A:32, IX, a deviation must be justified by competent medical evidence and be consistent with the specific dictates and general purpose of the AMA GUIDES. Whether and to what extent an alternative method is proper, credible, or permissible under the AMA GUIDES are questions of fact to be decided by the board. *See Vaughn*, 824 P.2d at 827 (as trier of fact, agency entitled to rely on expert testimony supporting deviation from AMA GUIDES). We hold only that the board may not disregard a physician's impairment evaluation solely because it deviates from the express recommended methodology of the AMA GUIDES.

In this case, Dr. Nagel explained in his written report and oral testimony that the nature of the petitioner's medical condition rendered his impairment incapable of measurement by the range of

motion test provided by the AMA GUIDES. He consequently resorted to an alternative method in calculating the petitioner's impairment, a decision which by itself does not exceed the statutory mandate of RSA 281-A:32, IX.

Because the board did not disclose the facts underlying its decision to deny a permanent impairment award on the basis of multiple bodily losses, *see* RSA 541-A:35 (1997), we are unable to determine whether the board reached its conclusions in accordance with the principles set forth above. *Cf. Foote v. State Personnel Commission*, 116 N.H. 145, 148, 355 A.2d 412, 414 (1976) (reviewing court needs findings of basic facts by the agency to ascertain whether the conclusions it reached were proper).

Accordingly, we vacate the board's denial of a permanent impairment award and remand for a new hearing. On remand, the claimant may present evidence substantiating the calculation of his impairment rating and setting forth the reasons for deviating from the AMA GUIDES. In light of this ruling, we need not address the petitioner's remaining arguments.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

All concurred.