Compensation Appeals Board
No. 97-399

## APPEAL OF DONALD E. SAVAGE, JR.
## (New Hampshire Compensation Appeals Board)

August 3, 1999

*Fitzgerald & Sessler, P.A.*, of Laconia (*Shawn E. Nichols* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Scott A. Ewing* and *Thomas W. Aylesworth* on the brief, and *Mr. Ewing* orally), for the respondent, State Farm Insurance Companies.

BRODERICK, J. The petitioner, Donald E. Savage, Jr., appeals the decision of the New Hampshire Compensation Appeals Board (board) denying his claim for workers' compensation benefits against his employer, William Henry Steel Company, and its insurer, State Farm Insurance Companies (respondent). On appeal, the petitioner argues that: (1) the board held him to a heightened standard of proof in establishing legal and medical causation; (2) the

board improperly rejected uncontradicted medical opinion and relied on its own interpretation of medical records; (3) he was entitled to payment of medical expenses pending the respondent's appeal to the board; and (4) the hearing officer's calculation of his weekly wage was proper. We vacate and remand.

In December 1994, the petitioner allegedly injured his back while carrying steel rods at a muddy construction site. He testified that he reported the injury to his employer the next day but did not seek immediate medical treatment because he had once "pulled a [back] muscle" which resolved on its own. In March 1995, the petitioner sought medical assistance at Franklin Regional Hospital where he was diagnosed with low back strain. He testified that his employer asked him not to report the injury as work-related and assured him the hospital bill would be paid.

In April 1995, the petitioner sought medical treatment from Dr. Gary Francke, an orthopedic surgeon, who evaluated the X rays and also diagnosed low back strain. The petitioner testified that because his symptoms continued and his employer did not pay his hospital bill, he told Dr. Francke "exactly how it happened." Dr. Francke's hand-written notes reflect that the petitioner was first injured in December 1994. Thereafter, the petitioner continued to work but attempted to lighten his duties until he was laid off as part of a seasonal slowdown in November 1995. He testified that his symptoms persisted and that he began experiencing pain in his right leg in late December 1995.

In late January 1996, he sought medical care from Dr. Noboru Murakami. A nurse examined him and concluded that he had suffered a severe back strain. Although the nurse's records document an injury "1 month ago," the petitioner explained that the date may reflect the onset of his new symptoms, and the date was later amended to December 1994 by Dr. Murakami. In February 1996, Dr. Murakami secured a CT scan of the petitioner's back, which revealed two herniated discs.

At that point, the petitioner sought a second opinion from Dr. Arnold Miller, an orthopedic surgeon, who concurred with Dr. Murakami that the herniations stemmed from the 1994 work incident and recommended surgery to remove the discs. A chiropractor and neurologist who treated the petitioner also agreed with this assessment.

The petitioner testified that, after Dr. Miller prohibited him from returning to work, he contacted his employer who advised him "to do what [he] had to do because [the employer] wasn't going to." The petitioner filed for workers' compensation benefits, but the respon-

dent denied his claim. Although the petitioner received a favorable decision from the department of labor hearing officer, the appeals board denied his claim based on lack of causation. At the hearing, the petitioner presented live testimony and submitted medical evidence for the board's review. The respondent produced no witnesses and offered no medical evidence of its own. The petitioner's motion for rehearing was denied, and this appeal followed.

## I

We first consider the petitioner's argument that the board failed to apply the preponderance of the evidence standard when deciding legal and medical causation. He contends that although the board purported to use that standard, it did not apply it. "We will not disturb the board's decision absent an error of law, or unless by a clear preponderance of the evidence we find it to be unjust or unreasonable." *Appeal of Demeritt*, 142 N.H. 807, 810, 713 A.2d 378, 380 (1998); *see* RSA 541:13 (1997).

█ To make out a claim for workers' compensation benefits, the petitioner must prove both legal and medical causation. *See Appeal of Kehoe*, 141 N.H. 412, 416, 686 A.2d 749, 752 (1996). "Legal causation entails a showing that the [petitioner's] injury is in some way work-related, while medical causation requires a showing that the injury was actually caused by the work-related event or condition." *Id.*

The board concluded that the petitioner "failed to establish by a preponderance of the evidence that the disc herniation [from] which he currently suffers arose out of and in the course of his employment." Although the board found that he was "currently disabled by a significantly damaged lumbar spine which causes him great pain, significantly limit[ing] his normal activities," it ruled that the petitioner failed to meet his burden with respect to both legal and medical causation. We review legal causation first.

"The legal causation test defines the degree of exertion that is necessary to make the injury work-connected. The test to be used depends upon the previous health of the employee." *Id.* (citation and quotations omitted). "Where there is no preexisting condition, any work-related activity connected with the injury as a matter of medical fact would be sufficient to show legal causation." *Id.* (emphasis omitted).

Although the petitioner testified that he "pulled a [back] muscle" in 1990 or 1991, he stated that this injury resolved itself in about a week and that he did not have any significant back problems prior to

his claimed 1994 work injury. One witness testified that the petitioner worked to his full capacity in 1993 but "never [saw] him give that hundred percent" when they worked together again in March or April of 1995. The petitioner also produced several medical reports and records relating his eventual disc herniations to his claimed work injury. The respondent produced no witnesses and offered no competing medical evidence.

■ In concluding that the petitioner failed to prove legal causation, the board stated: "It is not at all clear when the injury to his back occurred or that it occurred at work." The board, however, did not point to any evidence to support this conclusion. It is difficult, absent speculation, to discern from the board's order the basis for its determination that the petitioner failed to establish legal causation. Nowhere does the board say or intimate that the petitioner was not credible or that it disbelieved his testimony. *See Appeal of Gamas*, 138 N.H. 487, 490-91, 642 A.2d 925, 927 (1994). The respondent asserts that the medical records were inconsistent on the origin of the petitioner's injury, and that the petitioner was unable to explain his failure to file a workers' compensation claim in April 1995, when he first reported the alleged 1994 work incident to a medical provider. While the board may reconcile conflicting evidence, *see id.*, or disbelieve unrefuted evidence, *see Appeal of Barrington Educ. Ass'n*, 121 N.H. 949, 953-54, 437 A.2d 718, 721 (1981), we are unable to intelligently review the board's decision when it provides no illumination for its conclusions. *See* RSA 541-A:35 (1997); *cf. Foote v. State Personnel Comm'n*, 116 N.H. 145, 148, 355 A.2d 412, 414 (1976), *appeal after remand*, 118 N.H. 640, 392 A.2d 156 (1978) (reviewing court needs findings of basic facts by agency to ascertain whether conclusions it reached were valid). Accordingly, we remand the issue of legal causation to the board so it can make sufficient factual findings.

Ordinarily, we would end our analysis here. Because we have before us the same documentary record that was available to the board, however, we will address whether the board acted reasonably in determining that the petitioner failed to establish medical causation. *Cf. Appeal of Cote*, 139 N.H. 575, 580, 660 A.2d 1090, 1094 (1995). Therefore, assuming legal causation will be established and the board finds the petitioner's report of injury credible, we review whether the board erred in concluding that the petitioner did not establish medical causation.

To prove medical causation, the petitioner must show "that the work-related activities probably caused or contributed to the em-

ployee's disabling injury as a matter of medical fact." *Kehoe*, 141 N.H. at 417, 686 A.2d at 752-53 (quotation, emphasis, and brackets omitted). "Medical causation is a matter properly within the province of medical experts, and the board is required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion." *Demeritt*, 142 N.H. at 810, 713 A.2d at 380 (quotation omitted). Although the board is entitled to ignore uncontradicted medical testimony, it must identify the competing evidence or considerations supporting its decision to do so. *Id.*

The petitioner argues that the board erred by disregarding the opinions of his treating physicians and relying upon its own lay opinion to determine medical causation. We agree. In concluding that the petitioner failed to establish medical causation, the board found "it particularly noteworthy that none of the neurological symptoms of disc herniation noted first by Dr. Murakami in his report of January 31, 1996, were noted by Dr. Jeffery or his nurse following examination at the Franklin Regional Hospital emergency room on March 21, 1995, a date only four months after the asserted date of injury." This observation, even if accurate, does not justify the conclusion that medical causation was not established in the absence of supportive medical evidence. No physician offered any opinion that the symptoms noted in 1995 and 1996 were inconsistent, or that any apparent inconsistency was medically significant. Absent medical testimony, it is beyond the board's expertise to place conclusive weight on this apparent medical disparity. It may be that the neurological symptoms developed after March 1995 and were directly related to the original injury, as several of the petitioner's treating physicians opined.

Moreover, the petitioner contends that the 1995 hospital records actually reflect neurological symptoms of disc herniation. For example, Dr. Jeffery noted that "[p]ain periodically radiates to [right] hip" and the nurse observed that "[w]hen standing[,] pain radiates to [right] groin." Whether these symptoms are consistent or inconsistent with a disc herniation would be impossible for the board to resolve without supportive medical evidence. Further, subsequent doctors who performed additional, more precise testing confirmed the disc herniation and related it to the petitioner's 1994 work injury. Because the board is not qualified to diagnose symptoms of disc herniation unguided by medical evidence, we conclude that it acted unreasonably in ruling that the petitioner failed to establish medical causation. *See id.*

## II

We next address the petitioner's argument that the respondent was responsible for paying his medical bills pending its appeal to the board. The respondent contends that this issue is moot because it agreed to pay the petitioner's outstanding bills after he filed his appeal with this court.

■ We recently underscored that an insurance carrier has a *clear* statutory obligation to pay for a claimant's medical expenses pending its appeal to the board unless the hearing officer orders otherwise. *Appeal of Rainville*, 143 N.H. 624, 628, 732 A.2d 406, 410 (1999); *see* RSA 281-A:43, I(b), II (Supp. 1998). The respondent does not argue that the hearing officer suspended or terminated its obligation to pay the medical expenses in this case. Therefore, it is obligated to pay all uncontested medical bills incurred by the petitioner prior to the board's decision. *See Rainville*, 143 N.H. at 628, 732 A.2d at 410.

At oral argument, the petitioner argued for the first time that the respondent was also obligated to pay for back surgery recommended in 1996 by his treating physicians but not performed because the respondent refused to pay any of his incurred medical expenses until its appeal to the board had been adjudicated. The record reveals that the petitioner appealed the respondent's denial of payment of medical bills actually incurred and does not indicate that he requested a hearing concerning payment of the recommended but not incurred surgical expenses. We are not unsympathetic to the petitioner's argument that he would have undergone the surgery prior to the board's decision if the respondent had not unlawfully denied payment of his outstanding medical bills. Because this issue was raised for the first time at oral argument, however, we conclude that it is not preserved for our review. *See Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 60, 623 A.2d 746, 748 (1993).

## III

■ Finally, we consider the petitioner's argument that the hearing officer correctly calculated his weekly wage. After the petitioner received a favorable decision from the hearing officer in May 1996, the respondent began paying him $183.34 in weekly benefits based on an average weekly wage of $305.58. The petitioner challenged the wage payments and at a subsequent hearing in September 1996, the hearing officer determined that his weekly payments should have been $351.00 based on an average wéekly

wage of $585.00. The respondent, as part of its general appeal to the board, contested that calculation. The board made no finding as to the proper calculation of the petitioner's average weekly wage. Accordingly, that issue remains for the board to decide on remand.

*Vacated and remanded.*

All concurred.