Compensation Appeals Board
No. 2000-776

APPEAL OF GLEN A. BOUCHER
(New Hampshire Compensation Appeals Board)

Argued: March 7, 2002
Opinion Issued: October 25, 2002

*Joseph F. McDowell, III, P.A.*, of Manchester (*Richard J. Walsh* on the brief and orally), for the petitioner.

*Bernard & Merrill, PLLC*, of Manchester (*Andrew A. Merrill* and *Kevin W. Stuart* on the brief, and *Mr. Merrill* orally), for the respondent, Lumber Mutual Insurance Company.

BRODERICK, J. The petitioner, Glen A. Boucher, appeals a decision of the New Hampshire Compensation Appeals Board (board) determining the date from which interest was due on the contested portion of his permanent impairment award under RSA 281-A:44, I (1999). We reverse in part and remand.

The relevant facts are not in dispute. The petitioner suffered an injury to his left wrist and shoulder on March 3, 1997, while employed by Kamco Supply Corporation. He filed for, and received, workers' compensation

benefits. Dr. Wolf, the petitioner's treating physician, concluded in late August 1998 that the petitioner had a 97% impairment of his left upper extremity. In February 1999, a New Hampshire Department of Labor (DOL) hearing officer found that the petitioner had suffered a 63% permanent impairment of the upper extremity as a result of the work injury and subsequent surgeries. Both the petitioner and Lumber Mutual Insurance Company, the respondent and insurance carrier for Kamco, appealed the DOL decision to the board. On March 12, 1999, the respondent offered, and requested the DOL's permission, to voluntarily make weekly payments during the pendency of the *de novo* appeal to the board, based upon a 20% impairment. On March 19, 1999, the DOL accepted the 20% offer and directed the respondent to begin weekly payments of the permanent impairment award while the final amount of the award was in dispute.

At the board hearing, Kamco acknowledged that the petitioner was entitled to a permanent disability award, but argued that, properly calculated, it was only 57%. On December 10, 1999, the board ruled in the petitioner's favor and affirmed the 63% permanent impairment. In April 2000, the board denied the respondent's motion for rehearing. In response to the petitioner's request that he be awarded interest on the contested portion of the award from the date of his injury, the board made no clear finding as to the date interest began to accrue.

Following the respondent's request for a hearing to clarify the issue of interest, a newly-constituted board ruled in October 2000 that RSA 281-A:44, I, contained a "latent ambiguity as to the date from which the interest for a Permanent Impairment Award . . . should be calculated," and found that interest began to run either fourteen days after August 31, 1998 (the date of Dr. Wolf's permanent impairment evaluation report) or fourteen days after the date of the report's disclosure to the respondent, whichever was later. The board stated that the language of RSA 281-A:44, I ("[t]he interest shall be computed from the date of injury") was "clear and intelligible and suggests but a single meaning," but found an "apparent conflict with the language contained in RSA 281-A:32, XI." The board also found that interest would run only to

> the date the carrier voluntarily began making weekly payments of the permanent partial impairment award. No principle of justice or equity would be served by giving an employee an interest payment on top [of] his weekly payments after the carrier began making weekly payments of the permanent partial impairment award.

The board denied the petitioner's motion for reconsideration and this appeal followed.

Following oral argument before a 3JX panel in November 2001, the court ordered the parties to reargue the issue of interest calculation before the full court. *See Appeal of Glen A. Boucher*, No. 2000-776 (N.H. December 27, 2001); SUP. CT. R. 12-D. On appeal, the petitioner argues that he is entitled to interest on the contested portion of his permanent impairment award from the date of his injury (March 3, 1997) in accordance with RSA 281-A:44, I. We need not decide here what the "contested portion" is under the statute as all parties agree that the 6% difference in the impairment calculations represented the contested portion of the award, *i.e.*, $4,016.12. *See* RSA 281-A:32, I (1999).

We will not overturn the board's decision absent errors of law, or unless we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable. *See Appeal of Rose*, 146 N.H. 219, 220 (2001). RSA 281-A:44, I, provides:

> In any dispute over the amount of the benefit payable under this chapter which is appealed to the board or supreme court or both, the employee, if such employee prevails, shall be entitled to reasonable counsel fees and costs as approved by the board or court *and interest at the rate of 10 percent per year on that portion of any award the payment of which is contested. The interest shall be computed from the date of injury.*

(Emphasis added.)

The respondent argues that the petitioner's position requires us to "conjure up a perception of legislative intent requiring an interpretation of [RSA 281-A:44, I] which would result in an irrational, absurd and punitive award against insurers which legitimately exercise their rights." We disagree.

> We are the final arbiter of legislative intent as expressed in the language of a statute. In construing a statute, we ascribe the plain and ordinary meaning to words used, considering the statute as a whole and interpreting it consistent with its purpose. At issue here is the Workers' Compensation Law, which we construe liberally, resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to its remedial purpose.

*Appeal of Denton*, 147 N.H. 259, 260 (2001) (citations and quotations omitted).

■ The language of RSA 281-A:44, I, as it applies in this case, clearly and unambiguously provides that a prevailing employee is entitled to interest on the contested portion of a permanent impairment award, and that interest shall be computed from the date of injury. Given the plain language of the statute, we need not delve further in order to glean legislative intent. If the legislature intended that interest be paid on the contested portion of a permanent work-related injury award only from the date the permanency was established, it could have declared so in the language of the statute. It is not for us to put words into the statute, placing a limitation on the payment of interest, where the legislature has chosen not to do so, and it is for the legislature to adjust the statute if it so desires. *See id.* at 261.

■ The respondent further contends that RSA 281-A:44, I, contains a latent ambiguity and conflicts with RSA 281-A:32 (1999). Arguing that the permanent impairment award could not have been contested prior to its assessment by a physician and its presentation to the carrier, the respondent contends that the statute "appears to provide interest only after an award can be and has been contested." The respondent argues that the latent ambiguity is apparent, as the statute also provides that interest shall be computed from the date of injury. We see no such ambiguity. The respondent's argument erroneously assumes that the statute's clauses relate to the same temporal bounds. The first clause (that the prevailing employee shall be entitled to "interest at the rate of 10 percent per year on that portion of any award the payment of which is contested") defines the interest component on the contested portion of a prevailing employee's permanent impairment award. The second clause (that "interest shall be computed from the date of injury") is, by its plain language, temporal in nature and defines the point from which the interest on the contested portion of the permanent impairment award is calculated. Further, we see no conflict with RSA 281-A:32, XI. That statute deals solely with the payment of the scheduled permanent impairment award and makes no reference to the payment of interest.

■ The respondent next argues that the DOL's promulgation of New Hampshire Code of Administrative Rules, Lab 208.01(b)(2) provides additional evidence that the board's interpretation of the statute is correct. Given the plain language of the statute, we disagree. "An administrative agency must comply with the governing statute, in both letter and spirit. Even a long-standing administrative interpretation of a statute is irrelevant if that interpretation clearly conflicts with express statutory language." *Appeal of Rainville*, 143 N.H. 624, 627 (1999) (quotations and

citations omitted). Further, in workers' compensation cases, "a party's rights and liabilities, as well as the amount of compensation to which an employee is entitled, are determined by the law in force at the time of the injury." *Denton*, 147 N.H. at 261. As Lab 208.01(b)(2) was not in force at the time of the petitioner's injury, we need not consider it for the disposition of this case. *See id.*

Finally, we address the issue as to the date upon which interest ends. The board found that interest would run only to the date the carrier voluntarily began making weekly payments of the permanent partial impairment award. Had the respondent begun making weekly payments at the full 63% impairment award level, we would agree. Beginning in March 1999, however, the respondent made weekly payments at only a 20% impairment award level. Accordingly, the respondent owes interest on the agreed-upon 6% contested portion of the award to the date from which the respondent began making weekly payments at the full 63% impairment award level.

█ We reverse the decision of the board with regard to its determination of the date from which interest is due on the 6% contested portion of the petitioner's permanent impairment award under RSA 281-A:44, I. We hold that interest is due from the date of his injury, March 3, 1997, to the date the respondent began making weekly payments at the full 63% impairment award level. Accordingly, we remand this matter to the board to calculate the correct amount of interest due the petitioner, taking into consideration any interest payments already made to the petitioner by the respondent.

*Reversed in part and remanded.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.