Compensation Appeals Board
No. 2010-811

APPEAL OF NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS
(New Hampshire Compensation Appeals Board)

Argued: September 22, 2011
Opinion Issued: November 29, 2011

*Law Office of Leslie H. Johnson, PLLC,* of Center Sandwich (*Leslie H. Johnson* on the brief and orally), for the petitioner.

*Sulloway & Hollis, P.L.L.C.,* of Concord (*James E. Owers* and *Matthew J. Snyder* on the brief, and *Mr. Owers* orally), for the respondents.

DALIANIS, C.J. The respondents, New Hampshire Department of Corrections (DOC) and Liberty Mutual Insurance Company (collectively, the insurer), appeal the decision of the New Hampshire Compensation Appeals Board (CAB) that the petitioner, Michael Whitaker (claimant), was entitled to ongoing temporary total disability indemnity benefits beginning September 17, 2009. We affirm.

The following facts are derived from the record. The claimant first filed a workers' compensation claim in January 2008, alleging that he suffered emotional injuries on August 18, 2007, because of harassment and retaliation at his DOC job. The insurer denied the claim on January 25, 2008, on the ground that the claimant's injuries were not causally related to his employment. On June 16, 2009, the CAB ruled in the claimant's favor, awarding him benefits from October 24, 2007, the date he was deemed unable to work, through "at least" October 20, 2008, the date of the initial hearing before a department of labor hearing officer. *See* RSA 281-A:16 (2010). On August 14, 2009, in response to the claimant's motion, the CAB

clarified that he was entitled to benefits at the temporary partial disability rate. *See* RSA 281-A:31 (2010). On February 2, 2010, in response to the claimant's second motion for clarification, the CAB explained that he was entitled to temporary partial disability benefits "continuing after October 20, 2008."

The insurer did not appeal the CAB's June 16, 2009 decision. On October 2, 2009, the claimant sought to have his benefits increased to the higher temporary total disability rate beginning September 17, 2009, when he was hospitalized for "[m]ajor depressive disorder, recurrent, severe, with psychotic features." *See* RSA 281-A:28, :48 (2010). The insurer denied this request on October 15, 2009, on the ground that the claimant had failed to demonstrate that his hospitalization was related to his August 2007 work injury. A department of labor hearing officer ruled in the insurer's favor in January 2010; the claimant appealed to the CAB.

On August 26, 2010, the insurer filed a motion in the CAB proceedings to dismiss the claimant's request for increased benefits because, in 2008, he had filed a claim with the New Hampshire Commission for Human Rights, seeking damages for his allegedly wrongful discharge from DOC employment in June 2008. The insurer argued that by filing a statutory claim for wrongful termination, the claimant waived his claim for increased benefits. *See* RSA 281-A:8, III (2010). On October 6, 2010, the CAB denied the insurer's motion to dismiss, deciding that the claimant was entitled to ongoing temporary total disability indemnity benefits from his September 2009 hospitalization because he had proved that his hospitalization was related to his original August 2007 work injury. The insurer unsuccessfully moved for reconsideration, and this appeal followed.

On June 15, 2011, we granted the insurer's motion to supplement the record on appeal with a writ the claimant filed in superior court on September 15, 2010, against the State and the DOC, seeking damages for retaliation and discrimination under state and federal statutes. However, the insurer has not demonstrated that it preserved any issues related to the writ for our review. *See Appeal of Bosselait*, 130 N.H. 604, 606-08 (1988); *see also* SUP. CT. R. 10(1)(i). The record on appeal shows that the insurer's motion to dismiss and its October 6, 2010 motion for reconsideration were based upon the administrative claim filed with the human rights commission. The record does not show that the insurer ever alerted the CAB to the fact of the claimant's superior court writ. Accordingly, we decline to consider the parties' arguments with regard to the claimant's superior court writ. We, likewise, decline to consider arguments that the insurer raised for the first time at oral argument, such as its contention that the claimant's original work-related injury was for constructive discharge or

that the CAB erred by not requiring the claimant to dismiss his superior court writ. *See Appeal of Savage*, 144 N.H. 107, 112 (1999).

Our standard of review is statutory:

[A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007). Thus, we review the CAB's factual findings deferentially. *Appeal of Hartford Ins. Co.*, 162 N.H. 91, 93 (2011). We review its statutory interpretation *de novo. Id.*

■ On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 250 (2006). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Appeal of Gamas*, 158 N.H. 646, 648 (2009). We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose. *Id.* Thus, when construing it, we resolve all reasonable doubts in favor of the injured worker. *Id.*

■ Relying upon the exclusive remedy provision of the Workers' Compensation Law, RSA 281-A:8 (2010), the insurer first argues that the CAB erred when it denied the insurer's motion to dismiss. RSA 281-A:8 provides, in pertinent part:

I. An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions of this chapter and, on behalf of the employee or the employee's personal or legal representatives, to have waived all rights of action whether at common law or by statute or provided under the laws of any other state or otherwise:

(a) Against the employer or the employer's insurance carrier . . .

. . . .

III. Nothing in this chapter shall derogate from any rights a former employee may have under common law or other statute to

recover damages for wrongful termination of, or constructive discharge from, employment. However, if a former employee makes a claim under this chapter for compensation for injuries allegedly caused by such wrongful termination or constructive discharge, the employee shall be deemed to have elected the remedies of this chapter, and to have waived rights to recover damages for such wrongful termination or constructive discharge under common law or other statute. Similarly, if a former employee brings an action under common law or other statute to recover damages for such wrongful termination or constructive discharge, the employee shall be deemed to have waived claims under this chapter for compensation allegedly caused by such termination or discharge.

Workers' compensation is an employee's *exclusive* remedy for "*all* rights of action whether at common law or by statute . . . [a]gainst the employer or [its] . . . insurance carrier." RSA 281-A:8, I (emphasis added); *see Tothill v. Estate of Center*, 152 N.H. 389, 394-95 (2005). RSA 281-A:8, III contains a limited exception to the workers' compensation exclusivity bar for claims of "wrongful termination" or "constructive discharge." *See Lacasse*, 154 N.H. at 251. Under RSA 281-A:8, III, an employee may elect to bring a claim for wrongful or constructive discharge either under the Workers' Compensation Law or under some other law, but may not bring such a claim under both the Workers' Compensation Law and some other law.

The insurer argues that, pursuant to RSA 281-A:8, III, the claimant's 2008 administrative claim alleging wrongful discharge barred his October 2009 request for increased disability benefits. The insurer contends that having filed an administrative claim of discrimination alleging wrongful termination, the claimant waived his claim for increased workers' compensation benefits. This argument succeeds only if the claimant attempted to obtain *both* workers' compensation benefits *and* remedies under other laws for his allegedly wrongful termination. However, our review of the record reveals that the claimant has not brought a workers' compensation claim for his allegedly wrongful termination. Accordingly, the insurer's argument fails.

There is no evidence in the record that the claimant ever sought workers' compensation benefits for his June 2008 discharge from DOC employment. Both of his workers' compensation claims, the first filed in January 2008 and the second in October 2009, sought benefits related to an *August 2007* injury. In its June 2009 decision, which the insurer did not appeal, the CAB found that the claimant's August 2007 injury was legally and medically caused by his employment, and that from October 2007 until "at least"

October 2008, the claimant "remained disabled" as a result of this initial injury. In its October 2010 decision, the CAB decided that the claimant's medical condition "was not cured or stabilized during the almost two years from the [original] date of injury to the 9/17/09 hospitalization for recurrence of depression." Thus, the CAB reasoned, there was no break in the causal connection between the claimant's medical condition and the original August 2007 work injury. Accordingly, the CAB decided that the claimant was still entitled to disability benefits related to his original work injury.

■ There is no evidence in the record before us that the CAB has ever been asked to decide whether the claimant is entitled to workers' compensation benefits because of his discharge from employment. Thus, while the claimant may have sought damages for wrongful termination in his administrative claim of discrimination, he did not seek such damages in his January 2008 and October 2009 workers' compensation claims. Therefore, we hold that RSA 281-A:8, III does not bar the claimant's workers' compensation claims.

■ The insurer next contends that the claimant in his administrative claim of discrimination and/or superior court writ has sought statutory or common law remedies for the retaliation and discrimination he allegedly suffered before his discharge. Assuming, without deciding, that this is the case, the proper remedy would not be dismissal of the claimant's workers' compensation claim. As previously explained, workers' compensation provides the claimant's *exclusive* remedy for *all* claims against an employer or its insurer *except* wrongful or constructive discharge. *See id.* (workers' compensation is employee's exclusive remedy for negligent supervision claim against employer); *see also Karch v. Baybank FSB*, 147 N.H. 525, 529-30 (2002) (workers' compensation is employee's exclusive remedy against employer for negligent and intentional infliction of emotional distress). Whether dismissal of the superior court writ is required is not properly before us, and we express no opinion on it. The instant appeal concerns only the CAB's decision to allow the claimant's workers' compensation claim to go forward. It does not concern whether the human rights commission should have dismissed the claimant's administrative claim of discrimination or whether the superior court should dismiss his currently pending writ.

Relying upon RSA 281-A:38 (2010) (amended 2011), the insurer next argues that the CAB erred when it denied the insurer's motion *in limine* to exclude the report and testimony of the claimant's medical expert, Eric G. Mart, Ph.D., ABPP. The insurer argues that Dr. Mart's report and testimony should have been excluded because his qualifications do not satisfy the requirements of RSA 281-A:38, II.

■ The insurer's reliance upon RSA 281-A:38 is misplaced. The statutory requirements regarding medical expert qualifications apply only to medical examinations *"requested by the employer or ordered by [the CAB]."* RSA 281-A:38, I (emphasis added). They do not apply to medical examinations conducted by the claimant's own experts. RSA 281-A:38, I, makes this clear by explaining that the medical examinations to which it refers must be "paid by the employer" and conducted "at a time and place reasonably convenient for the employee." It further explains that the employee has "the right to have a health care provider designated and paid by himself or herself present at *such examination*" — that is, at the examination conducted at the request of the employer or ordered by the CAB. RSA 281-A:38, I (emphasis added).

■ Further, RSA 281-A:38, II refers to medical examinations "requested by the employer or ordered by [the CAB]," RSA 281-A:38, I, as "independent medical examinations," meaning medical examinations that are not conducted at the claimant's behest. RSA 281-A:38, II provides that "[a]ny health care provider conducting independent medical examinations" must meet certain professional requirements.

■ Based upon the plain meaning of RSA 281-A:38, read as a whole, we hold that the CAB did not err when it allowed the claimant to submit the report and testimony of his own medical expert. Contrary to the insurer's assertions, the requirements set forth in RSA 281-A:38, II apply only to health care providers conducting independent medical examinations.

*Affirmed.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.