NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2017-0469

APPEAL OF ANDREW PANAGGIO
(New Hampshire Compensation Appeals Board)

Argued:  June 14, 2018
Opinion Issued:  March 7, 2019

Shaheen & Gordon, P.A., of Manchester (Jared P. O'Connor on the brief and orally), for the petitioner.

Tentindo, Kendall, Canniff & Keefe LLP, of Boston, Massachusetts (Robert S. Martin on the brief and orally), for the respondent.

BASSETT, J.  The petitioner, Andrew Panaggio, appeals a decision of the New Hampshire Compensation Appeals Board (board).  The board denied his request for reimbursement from the respondent, CNA Insurance Company (insurance carrier), for the cost incurred for therapeutic cannabis authorized pursuant to RSA chapter 126-X, to treat his work-related injury.[1]  We reverse in part, vacate in part, and remand.

The record supports the following facts.  Panaggio suffered a work-related injury to his lower back in 1991.  A permanent impairment award was

_____

[1] RSA chapter 126-X is titled "Use of Cannabis for Therapeutic Purposes."  The board used the term "medical marijuana."  For ease of reference, we consider the terms "cannabis" and "marijuana" to be interchangeable for purposes of this appeal.

approved in 1996, and in 1997 he received a lump-sum settlement. Panaggio continues to suffer ongoing pain as a result of his injury and has experienced negative side effects from taking prescribed opiates. In 2016, the New Hampshire Department of Health and Human Services determined that Panaggio qualified as a patient in the therapeutic cannabis program, and issued him a New Hampshire cannabis registry identification card. See RSA 126-X:4 (Supp. 2018). Panaggio purchased medical marijuana and submitted his receipt to the workers' compensation insurance carrier for reimbursement. The carrier denied payment on the ground that "medical marijuana is not reasonable/necessary or causally related" to his injury.

Panaggio challenged the insurance carrier's denial before the New Hampshire Department of Labor. The hearing officer found that Panaggio had "failed to satisfy his burden of proof that the outstanding medical treatment is reasonable, related or made necessary by the work injury." Therefore, the officer concluded that "reimbursement and payment of expense associated with the medicinal marijuana cannabis is not reasonable."

Panaggio appealed the hearing officer's decision to the board. Following a hearing, the board rejected the insurance carrier's position that Panaggio's use of medical marijuana is not medically reasonable or necessary. The board credited Panaggio's testimony that "cannabis is palliative and has the added benefit of reducing his need for opiates," and unanimously found that Panaggio's "use is reasonable and medically necessary." Nonetheless, a majority of the board upheld the carrier's refusal to reimburse Panaggio, concluding that "the carrier is not able to provide medical marijuana" because such reimbursement is "not legal under state or federal law."

The board observed that "possession of marijuana is still a federal crime," and that the registry identification card issued by the State explains that RSA chapter 126-X "does not exempt a person from federal criminal penalties for the possession of cannabis." (Quotation omitted.) Relying upon the statutory language that "[n]othing in this chapter shall be construed to require . . . [a]ny health insurance provider, health care plan, or medical assistance program to be liable for any claim for reimbursement for the therapeutic use of cannabis," RSA 126-X:3, III(a), the board determined that RSA 126-X:3, III(a) (2015) bars Panaggio's request for reimbursement, finding that the clear purpose of the statute is "to protect such providers from being subject to criminal prosecution under federal law." Although noting that workers' compensation insurance carriers are not expressly identified in the statute, the board concluded that, because such carriers "provide payments for medical treatment just as health insurers do," subsection 3, III(a), applies to them as well.

One member of the three-member board dissented. He disagreed with the majority's conclusion that because "marijuana is still illegal under federal

law . . . [,] requiring the [carrier] to provide reimbursement would make the [carrier] complicit in this legal violation," noting that the insurance carrier "cites no specific section of the Federal Controlled Substances Act that reimbursement to the claimant would violate." In addition, he disagreed with the majority's interpretation of RSA 126-X:3, III, reasoning that it was not supported by a "simple reading of the law's language" and "[i]f the legislature had wanted to include workers' compensation [insurers], these insurers could have been listed." Panaggio unsuccessfully moved for reconsideration, and this appeal followed.

On appeal, Panaggio argues that the board erred in its interpretation of RSA 126-X:3, III, and when it based its decision in part on the fact that possession of marijuana is illegal under federal law. We will not disturb the board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. Appeal of Phillips, 169 N.H. 177, 180 (2016); see RSA 541:13 (2007). The appealing party has the burden of demonstrating that the board's decision was erroneous. See Appeal of Fay, 150 N.H. 321, 324 (2003). All findings of the board upon questions of fact properly before it are deemed to be prima facie lawful and reasonable. See RSA 541:13. Thus, we review the board's factual findings deferentially. See Appeal of N.H. Dep't of Corrections, 162 N.H. 750, 753 (2011). We review its statutory interpretation de novo. Id.

We first address Panaggio's argument that the board's interpretation of RSA 126-X:3, III(a) was erroneous. He asserts that "[a]bsent crystal clear instruction from the New Hampshire Legislature to do otherwise, the Board was . . . required to order the insurer to pay" pursuant to the obligation imposed by the workers' compensation statute. See RSA 281-A:23, I (2010) (providing that an injured employee is entitled to have his or her employer's insurance carrier furnish "reasonable medical . . . care . . . for such period as the nature of the injury may require"). The insurance carrier does not challenge the board's finding that Panaggio's use of medical marijuana is reasonable and medically necessary. Rather, the carrier argues that "[t]he clear purpose of" RSA 126-X:3, III(a) "is to prevent any reimbursement of medical marijuana by any entity that would be subject under contract or law to pay." According to the carrier, "the plain and unambiguous language of the statute creates . . . an explicit prohibition to require an insurer to pay a claim for reimbursement."

On questions of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole. Appeal of Phillips, 169 N.H. at 180. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. In addition, we construe the workers' compensation

3

statute liberally to give the broadest reasonable effect to its remedial purpose. Appeal of Gamas, 158 N.H. 646, 648 (2009). Thus, when construing the statute, we resolve all reasonable doubts in favor of the injured worker. Id.

RSA 126-X:3, III states that "[n]othing in this chapter shall be construed to require . . . [a]ny health insurance provider, health care plan, or medical assistance program to be liable for any claim for reimbursement for the therapeutic use of cannabis." RSA 126-X:3, III(a) (emphasis added). Although the statute does not create a right to reimbursement for the cost of medical marijuana nor require any of the listed entities to participate in the therapeutic cannabis program, neither does it bar any of those entities from providing reimbursement. Importantly, the statute provides that "[a] qualifying patient shall not be . . . denied any right or privilege for the therapeutic use of cannabis in accordance with this chapter." RSA 126-X:2, I (2015). To read RSA 126-X:2, III as barring reimbursement of an employee with a workplace injury for his reasonable and necessary medical care is to ignore this plain statutory language. Pursuant to the Workers' Compensation Law, an employer's insurance carrier "shall furnish or cause to be furnished to an injured employee reasonable medical . . . care . . . for such period as the nature of the injury may require." RSA 281-A:23, I. Thus, the effect of denying reimbursement of Panaggio under these circumstances is to deny him his right to medical care deemed reasonable under the Workers' Compensation Law.

We note that statutes in other jurisdictions expressly prohibit workers' compensation insurance carriers from reimbursing claimants for the cost of medical marijuana. See, e.g., Fla. Stat. § 381.986(15) (2017) (providing in Florida's Medical Use of Marijuana statute that "[m]arijuana . . . is not reimbursable under" Florida's Workers' Compensation Law); Mich. Comp. Laws § 418.315a (2014) (providing in the Michigan Worker's Disability Compensation Act that "[n]otwithstanding" the requirement that an employer "shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical . . . treatment," an employer "is not required to reimburse or cause to be reimbursed charges for medical marihuana treatment"). Had the legislature intended to bar patients in the therapeutic cannabis program from receiving reimbursement under RSA 281-A:23, I, it easily could have done so, and we will not add language that the legislature did not see fit to include. See Appeal of Phillips, 169 N.H. at 180.

Reading the language in RSA 126-X:3 in the context of the statutory scheme as a whole, we agree with Panaggio that, although RSA 126-X:3, III(a) "does not newly create an affirmative statutory obligation for any enumerated entity to reimburse any patient for money spent on therapeutic cannabis," neither does it "disturb preexisting, separate statutory obligations to provide for reimbursement." Accordingly, because the board found that Panaggio's use of medical marijuana is reasonable, medically necessary, and causally related to his work injury, we hold that the board erred when it determined that the

4

insurance carrier is prohibited from reimbursing Panaggio for the cost of purchasing medical marijuana.

Next, Panaggio asserts that the board erred by basing its decision, in part, on the fact that possession of marijuana is illegal under federal law. After rejecting the insurance carrier's argument that Panaggio's use of medical marijuana is not medically reasonable or necessary, the board concluded that "the carrier is not able to provide medical marijuana," observing that "possession of marijuana is still a federal crime." In its order, the board referenced information that the State provides to patients who qualify for the therapeutic cannabis program. The information includes statements that RSA chapter 126-X "does not exempt a person from federal criminal penalties for the possession of cannabis," and that federal law "does not allow for the medical or therapeutic use of cannabis." The board also noted that Attorney General Sessions had "announced that [the current] administration would resume prosecuting more stridently criminals involved in the drug trade whether they were violent offenders or not."

Panaggio argues that the board, having noted only that Panaggio's possession and use of medical marijuana is a federal crime, "did not explain why it necessarily follows that the carrier may not separately be ordered to comply with its own independent state law obligation to reimburse claimants for related medical treatment." He further argues that the "existence of the Controlled Substances Act does not undo the Workers' Compensation Law's requirement to reimburse" because an order to reimburse will not make the insurance carrier "possess, manufacture or distribute" a controlled substance, and "[r]eimbursement of the cost of therapeutic cannabis to a patient otherwise qualified under New Hampshire law to possess it is not an offense identified in the Controlled Substances Act." See 21 U.S.C. § 841(a)(1) (2012).

On appeal, the insurance carrier asserts that if it "is ordered to reimburse the employee for the payment of medical marijuana, it would be in express violation" of federal laws that prohibit a person from knowingly possessing a controlled substance, see 21 U.S.C. § 841(a)(1), from attempting or conspiring to commit a violation of federal law related to controlled substances, see 21 U.S.C. § 846 (2012), and from aiding and abetting an offense against the United States, see 18 U.S.C. § 2(a) (2012). However, the board's order does not indicate that it relied upon any of these statutory provisions in reaching its decision. Nor did the board analyze whether the insurance carrier's compliance with an order to reimburse Panaggio for medical marijuana obtained in accordance with state law would violate any federal statute. For example, the board did not address whether, under those circumstances, the government would be able to prove the commission of a federal crime beyond a reasonable doubt, including proof that the carrier had the requisite criminal intent. See United States v. Watson, 669 F.2d 1374, 1379 (11th Cir. 1982) (to prove a conspiracy under 21 U.S.C. § 846, the

5

government must prove that there was an agreement among the defendants to achieve an illegal purpose); United States v. Dolt, 27 F.3d 235, 238 (6th Cir. 1994) (to establish aiding and abetting, the government must prove that the defendant committed overt acts or affirmative conduct to further the offense, and intended to facilitate the commission of the crime); United States v. Rodriguez-Duran, 507 F.3d 749, 758-59 (1st Cir. 2007) (to prove aiding and abetting, "[m]ere association with the principal . . . is insufficient, even with knowledge that the crime is to be committed" (quotation omitted)).

Our standard of review of a board's decision presupposes that the board has made findings that provide an adequate record of its reasoning sufficient for a reviewing court to render meaningful review. See Motorsports Holdings v. Town of Tamworth, 160 N.H. 95, 107 (2010); see also RSA 541-A:35 (2007) (providing that "[a] final decision or order adverse to a party in a contested case shall be in writing or stated in the record" and "shall include findings of fact and conclusions of law, separately stated"). However, in concluding that the insurance carrier "is not able to provide medical marijuana," the board simply stated that "possession of marijuana is still a federal crime" and that RSA 126-X:3, III "is clearly a provision to protect [the carrier] from being subject to criminal prosecution under federal law." The board did not cite any legal authority for its conclusion, much less identify a federal statute that, under the circumstances of this case, would expose the insurance carrier to criminal prosecution; thus, we are left to speculate.[2] See Lewis v. American General Media, 355 P.3d 850, 858 (N.M. Ct. App. 2015) (rejecting, as mere "speculation," employer's argument that reimbursing an injured employee for medical marijuana renders it criminally liable under federal law). But see Bourgoin v. Twin Rivers Paper Co., 187 A.3d 10, 17 (Me. 2018) (determining that employer's act of subsidizing an employee's acquisition of medical marijuana meets the elements of aiding and abetting as defined in federal law).

Because the board's order fails to sufficiently articulate the law that supports the board's legal conclusion and fails to provide an adequate explanation of its reasoning regarding federal law, it is impossible for us to discern the basis for the board's decision sufficient for us to conduct meaningful review. See Appeal of Savage, 144 N.H. 107, 110 (1999); see also Appeal of Walker, 144 N.H. 181, 184 (1999) (explaining that we are "unable to

---

[2] We note that for at least a decade, the Department of Justice had a policy of declining to prosecute individuals whose possession and use of medical marijuana was in compliance with state law authorizing such possession and use. See David W. Ogden, Deputy Attorney General, Memorandum: Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana, October 19, 2009; James M. Cole, Deputy Attorney General, Memorandum: Guidance Regarding Marijuana Enforcement, August 29, 2013. Although Attorney General Sessions subsequently rescinded that policy, since 2015 the federal budget has effectively prohibited the Department of Justice from prosecuting individuals who engage in conduct permitted by state medical marijuana laws and who fully comply with such laws. See United States v. McIntosh, 833 F.3d 1163, 1177 (9th Cir. 2016).

intelligently review [the board's] decision when it does not provide an adequate basis for its conclusions").  Accordingly, we remand to the board for a determination of these issues in the first instance.

<u>Reversed in part; vacated in part; and remanded</u>.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.