1997 SD 39

**Floyd GRAHAM, Plaintiff and Appellee,**

v.

**BABINSKI PROPERTIES, Defendant and Appellant.**

**No. 19680.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1997.

Decided April 9, 1997.

Jay Kolb, Sioux Falls, for plaintiff and appellee.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, L.L.P., Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Floyd Graham, an employee of Babinski Properties, sought overtime pay after his supervisors imposed duties he could not complete within his regular shift. Babinski refused, insisting their only agreement was

for forty hours a week. Graham brought suit under the Fair Labor Standards Act claiming his superiors had reason to know he was working overtime. Can Babinski's constructive knowledge its employee was working excess hours create liability for overtime pay? We hold such knowledge was sufficient and affirm the judgment for Graham.

## Facts

[¶ 2.] Babinski owns and manages several apartment complexes in Sioux Falls. Graham worked in 1991 as a caretaker for the building in which he lived. Initially, his hourly wages were used to offset his monthly rent. In April 1993, Babinski hired him as a full-time groundskeeper at one of the apartment complexes. By oral agreement, Graham would work from 8:00 a.m. until 4:30 p.m., Monday through Friday, and receive $350 a week.

[¶ 3.] Graham was to mow and trim lawns, plant and prune trees, and generally maintain the complex grounds in the summer. During the winter, he was responsible for snow removal, maintenance, and repairs. As time progressed, Graham discovered it took at least fifty hours a week for lawn maintenance alone. At times, he was called away from groundskeeping duties to perform varied maintenance jobs. He felt pressured by his supervisor to complete all his tasks, especially when Don Babinski, the owner, was in town. Graham helped with several special projects, some of which were at other Babinski properties, including renovation and basement work, roof repairs, night security services at his apartments, and "on-call" emergency maintenance.

[¶ 4.] From April 1993 until July 1994, Graham was not required to fill out time cards. After July 1994, however, he submitted time cards with the assistance of Babinski employees, generally showing he worked forty hours each week. At this point, the parties' renditions diverge. Graham insisted he was forced to work overtime to keep up with his duties, as well as respond to all the special projects he was delegated. Apartment residents testified they would see or hear him working both before and after his assigned hours, while Babinski employees testified to the contrary. Graham said he discussed with his supervisor the added time he was working, but was informed he would receive extra days off during the winter to make up for the hours worked, a remedy he never obtained. He also testified he contacted Don Babinski about the situation, but claims he was threatened with an adverse parole report, should he decide to push the issue. Don Babinski did not testify at trial, but a supervisor denied any such conversation took place with Graham. Testimony over the time cards was also conflicting. Graham's supervisor declared Graham never claimed any overtime hours; conversely, Graham said he twice reported overtime, but when he did, he received no check at all. As a result, he began recording only forty hours a week on the cards, and his checks resumed. At trial, Babinski produced time cards with no overtime recorded. Graham denied certain notations were in his handwriting.

[¶ 5.] Graham resigned on January 4, 1996, due to a back injury suffered while laying carpet in a Babinski apartment. He sought overtime pay and cited instances when Babinski paid other employees overtime. Two full-time maintenance workers received overtime because, according to Babinski, they had bargained for it in their original employment negotiations, while Graham had not. Graham complained to the United States Department of Labor. In a letter, the Department responded it would investigate the claim when its backlog of cases permitted, but it also advised Graham that he could pursue a private action. Graham then commenced suit in circuit court pursuant to the Fair Labor Standards Act (FLSA), 29 USC § 206 et seq., alleging Babinski owed him $5,614.53 in back overtime wages. A unanimous jury agreed. He was awarded $16,096.58, which included back wages, an identical amount for liquidated damages ($5,614.53), and attorney fees ($4,867.52).

[¶ 6.] Babinski appeals, asserting the trial court erred: (1) by instructing the jury on implied contract when the parties had an express employment agreement; (2) by refusing instructions on express contract; and (3) in not directing a verdict when Graham

failed to prove the existence of an agreement to pay overtime.

## Discussion

### Overtime Compensation Under The Fair Labor Standards Act

■■■ [¶ 7.] Babinski couches this appeal on the distinction between express and implied contracts, arguing the court erroneously instructed on implied contract when Graham had an express agreement which permitted no overtime. We review instructions as a whole. They are sufficient if they correctly state the law and so inform the jury. Courts should instruct on issues supported by competent evidence in the record. *Schaffer v. Edward D. Jones & Co.*, 1996 SD 94, ¶ 14, 552 N.W.2d 801, 806 (*Schaffer II*)(citing *Bauman v. Auch*, 539 N.W.2d 320, 323 (S.D.1995)); *Ainsworth v. First Bank of SD*, 472 N.W.2d 786, 788 (S.D.1991). Error is reversible only if it is prejudicial. *Sommervold v. Grevlos*, 518 N.W.2d 733, 739 (S.D.1994); *Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 541 (S.D.1986).

[¶ 8.] Babinski asserts Instructions 24 and 25 improperly allowed the jury to consider whether overtime was expressly or impliedly authorized.[1] For support, Babinski cites SDCL 53-1-3: "A contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." To Babinski the first sentence means an employment contract cannot be both express and implied, but one or the other; therefore,

an express forty-hour contract precludes an implied agreement for additional hours.

■■■ [¶ 9.] Express versus implied contract distinctions misshape the precise framework in which we must consider FLSA claims. Instructions 24 and 25 correctly state the law under the Act, which provides in part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).[2] Civil damages are recoverable under 29 U.S.C. § 216(b): "Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C.S. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). FLSA claims can be brought in "any court of competent jurisdiction," including a state court. *Freudenberg v. Harvey*, 364 F.Supp. 1087, 1090 (E.D.Pa.1973)(citing 29 U.S.C. § 216(b)).

■■■ [¶ 10.] The purpose of the FLSA overtime provisions are two-fold: (1) to spread employment by imposing financial pressure on employers with strict require-

---

1. *Instruction 24:* The law states that a working day is eight hours, unless there is an express agreement to the contrary, and a worker for hourly wages must be paid overtime. Overtime is time and one-half. Babinski is not liable for Graham's overtime unless Babinski either expressly or by implication authorized the overtime. An express authorization occurs if the parties have a direct agreement, either in writing or oral for a worker to work overtime. An implied authorization occurs if Babinski knew or should have known that Graham worked overtime and allowed the overtime to continue or did nothing to prevent such overtime. In either situation, in order to prove his case, Graham must actually have performed the labor. In this case there is no doubt that

Graham and Babinski had an employment contract whereby Babinski agreed to pay wages to Graham for a forty hour week. The initial terms of the contract did not include overtime. Babinski is a corporation and the law treats a corporation the same as a natural person.
*Instruction 25:* Graham must prove that he actually worked overtime and that Babinski expressly authorized the overtime or authorized the overtime by implication.

2. A catalogue of employment relationships are excepted from FLSA application, *see* 29 U.S.C. § 213, including some agricultural jobs.

ments for overtime, and (2) to compensate employees who work more hours than allocated in the Act. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29, 33 (1944); *see generally White v. Witwer Grocer Co.*, 132 F.2d 108 (8thCir.1942). Courts must construe the Act liberally to aid its intended beneficiaries. *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 867 (S.D.N.Y.1984).

■ **[¶ 11.]** An employee bringing an action for overtime wages must prove by a preponderance of evidence the work was actually performed. *Reich v. Chez Robert, Inc.*, 821 F.Supp. 967, 972 (D.N.J.1993), *vacated on other grounds* 28 F.3d 401 (3rdCir.1994). Proof of the amount and extent of work performed may be inferred from the circumstances. *Id.* at 973; *Dole v. Tony & Susan Alamo Foundation*, 915 F.2d 349, 351 (8thCir.1990).

> The employee must prove "that he has in fact performed work for which he was improperly compensated," *id.* at 687, 66 S.Ct. at 1192, and must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," *id.* The employer must then come forward with evidence of the exact number of hours worked or with evidence to negate the reasonableness of the inference to be drawn from the plaintiff's evidence. *Id.*

*Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480, 485 (D.Md.1982)(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). An employee's recollection of hours worked may establish a prima facie case. *Id.* (citing, *inter alia, Mumbower v. Callicott,* 526 F.2d 1183 (8thCir.1975)).

■ **[¶ 12.]** Employees must produce, as noted above, sufficient evidence of hours worked. *LaPorte v. General Elec. Plastics*, 838 F.Supp. 549, 557–58 (M.D.Ala.1993). Here, Babinski did not require Graham to fill out time cards until July 1994, over a year after he began. When he started submitting time cards, Graham alleged they were not filled out by him in some instances, and, importantly, they were at odds with the calendar Graham kept contemporaneously with his daily responsibilities. Graham contended at trial his calendar notations were correct; on the other hand, Babinski's witnesses testified their reports were correct. Whose records were more accurate was an issue for the jury. "[I]t is not the function of this court on review to weigh conflicting evidence or to pass upon credibility of witnesses; that task lies within the province of the jury." *Sharkey v. Washington Nat. Ins. Co.*, 373 N.W.2d 421, 427 (S.D.1985); *see also Christie v. Dold,* 524 N.W.2d 866, 873 (S.D.1994)("[I]t is not the duty of an appellate court, in reviewing a verdict, to weigh conflicting evidence or pass upon the credibility of witnesses.").

■ **[¶ 13.]** Graham also had to prove, as Instructions 24 and 25 accurately specified, that Babinski had actual or constructive knowledge of the overtime he was working. *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 278–79 (E.D.Va.1992). On this point, the Ninth Circuit Court of Appeals wrote:

> An employer who knows or should have known that an employee is or was working overtime is obligated to pay overtime. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation....

*Id.* at 278 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9thCir.1981)). Whether actual or constructive knowledge exists is a question of fact. *Reich v. Dep't of Cons.& Natural Resources,* 28 F.3d 1076, 1082 (11thCir.1994). Babinski attempts to elude an inference of knowledge by arguing that Graham's supervisor and other employees did not know Graham was working overtime. Yet the question is not necessarily "did they know," but "should they have known?" *Newton v. City of Henderson,* 47 F.3d 746, 748 (5thCir.1995)(knowledge may be actual or constructive). Here the jury, following Instruction 24, apparently found Babinski "knew or should have known" Graham was working overtime, did nothing to prevent it, and, therefore, impliedly authorized it. Graham testified it took him fifty hours to complete groundskeeping duties alone, besides the time he spent on mainte-

nance work. Testimony from apartment residents confirmed it was common to see Graham finishing his mowing duties at night or snowblowing the walks in the morning before his shift. They also testified, as did Babinski employees, that Graham was asked to and worked night security duty in his complex, a task beyond the bounds of his original eight-hour workday.

[¶ 14.] Under the FLSA, Babinski could not simply rest on explicit contract terms. Federal regulations are instructive:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13 (1996); *Dep't of Cons.& Natural Resources,* 28 F.3d at 1083. If facts existed giving rise to notice that Graham worked overtime regularly, management bore a responsibility to further investigate, no matter the terms of the original contract. *Dep't of Cons.& Natural Resources,* 28 F.3d at 1082 (holding it is the duty of the employer to inquire into the circumstances creating overtime work, if they were such that an employer would know or with reasonable diligence could know of them). Employers must be aware of "conditions prevailing" in the workplace and "the cases must be rare where prohibited work can be done ... and knowledge or the consequences of knowledge avoided." *Id.* (citations omitted). *See also Donovan,* 549 F.Supp. at 488 ("It is immaterial whether it was necessary for [the employee] to work long hours, so long as he did, with the actual or constructive knowledge of his employer. An employer who knows or should know that an employee is working overtime, whether voluntary or not, cannot allow him to do so....").

[¶ 15.] Graham testified he twice submitted time cards accurately reflecting his overtime hours, but then he received no check. Pressure to misreport hours imposes constructive knowledge of overtime work on an employer. *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825 (5thCir.1973); *compare Forrester,* 646 F.2d 413 (employee hid from the employer that overtime was being worked, so knowledge of overtime held not to be binding on employer). *See also Wahl v. City of Wichita, Kan.,* 725 F.Supp. 1133, 1146–47 (D.Kan.1989)(holding that failure to note overtime on time cards is not fatal to FLSA claim if the act would be futile).

[¶ 16.] Babinski urges us to consider *Newton,* a Fifth Circuit case. There, a police officer sued for and recovered overtime he failed to report on his time cards. His damage award was reversed on appeal. 47 F.3d at 750. Two important differences stand between *Newton* and Graham. First, the police officer never demanded payment for overtime hours worked, while Graham testified he did—on two time cards. He also said he discussed the situation with both his supervisor and Don Babinski. *Compare Zoltek v. Safelite Glass Corp.,* 884 F.Supp. 283, 286 (N.D.Ill.1995)(employee who failed to make his overtime known to his employer impliedly consented to a fixed wage sum per week despite the hours worked). Second, the police officer in *Newton* ignored an express order not to work more overtime than authorized. 47 F.3d at 749. Here the jury apparently believed Graham was never given such a command. Babinski's insistence its contract provided for no overtime is belied by the penchant it had for giving Graham additional responsibilities, coupled with work beyond the day shift. Regardless, the rights embodied in the FLSA "are independent of, and superior to, contract arrangements between the employer and employee." *Wahl,* 725 F.Supp. at 1145.

[¶ 17.] In sum, the FLSA disdains arrangements in which employees are not paid for their work. *Berry v. County of Sonoma,* 30 F.3d 1174, 1181 (9thCir.1994)(citing *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949, 959 (1944)).[3] The

---

3. *See also Usery v. Godwin Hardware, Inc.,* 426 F.Supp. 1243, 1265 (W.D.Mich.1976)("Compen-

court's instructions were not given in error, as they properly reflect the dictates of the FLSA. By special verdict the jury found Babinski implicitly authorized overtime for Graham, a decision we conclude is supported by the record. *See, e.g., Wahl, supra.* Babinski's remaining arguments lack sufficient merit for discussion.

[¶ 18.] Finally, Graham petitions the court for appellate attorney fees, as well as ten percent statutory damages for delay pursuant to SDCL 15–30–6(5). He cites no authority for allowing appellate attorney fees, so we deem the issue waived. Statutory damages for delay are vested in the Court's

discretion, and we see no reason to award them here.

[¶ 19.] Affirmed on all issues.

[¶ 20.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

---

sating an employee on a salary basis, without extra compensation at the premium rate specified by section 7 of the Act, for hours worked in excess of 40 in a workweek, violates section 7 of the Act.")(citing *Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)).