2003 SD 23

**Paul HASSE, d/b/a Coyote Vending and Lottery Company, Plaintiff and Appellant,**

v.

**FRATERNAL ORDER OF EAGLES # 2421 OF VERMILLION, South Dakota, Defendant and Appellee.**

**No. 22469.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided Feb. 26, 2003.

James E. McCulloch, Vermillion, South Dakota, Attorney for plaintiff and appellant.

Craig K. Thompson, Vermillion, South Dakota, Attorney for defendant and appellee.

ZINTER, Justice.

[¶ 1.] In 1999, the Fraternal Order of Eagles # 2421 (F.O.E), lessor, filed a notice of termination of a video lottery lease and commenced a declaratory judgment action to determine whether the lease was terminated. The circuit court in that former action ruled that the lease was terminated. However, the lessee, Paul Hasse appealed, and this Court reversed the circuit court in *Fraternal Order of Eagles # 2421 of Vermillion v. Hasse*, 2000 SD 139, 618 N.W.2d 735 (*Eagles I*). Hasse then commenced this action for damages for lost profits incurred during the time his lease was terminated. The circuit court in this action granted F.O.E. summary judgment. The court reasoned that F.O.E. was not liable for damages because it acted in reliance on the prior circuit court order when it terminated the lease. Hasse appeals that decision, and we reverse.

## FACTS AND PROCEDURE

[¶ 2.] The F.O.E. and Hasse entered into the video lottery lease in 1989. Under the lease, the F.O.E. gave Hasse floor space to operate video lottery machines. In return, F.O.E. received a percentage of the net proceeds earned from the machines. The lease automatically renewed every four years unless either party terminated the agreement by invoking certain termination provisions in the lease. The last automatic renewal occurred in 1993.

[¶ 3.] In 1994, South Dakota's then existing video lottery was held to be unconstitutional. Poppen v. Walker, 520 N.W.2d 238 (S.D.1994). That decision cast doubt on the validity of video lottery leases. However, South Dakota voters promptly amended the South Dakota Constitution to permit video lottery. The constitutional amendment also included a savings clause which purportedly ratified video lottery leases that were in existence at the time of the *Poppen* decision.

[¶ 4.] Despite the savings clause, F.O.E. mistakenly believed that its lease with Hasse was null and void. Therefore, in 1994 and again in 1997, it requested that Hasse remove the machines from F.O.E.'s premises. On each of these occasions, the parties negotiated the dispute and avoided a termination. Consequently, the lease continued.

[¶ 5.] In 1999, F.O.E. again attempted to terminate the lease. On this occasion, it

notified Hasse that the lease was terminated, and it commenced a declaratory judgment action in circuit court to determine the validity of the termination. In that action, Circuit Court Judge Kathleen Caldwell ruled that the lease had been terminated, and it ordered Hasse to remove the machines from the F.O.E. premises. However, Hasse appealed that decision, and the F.O.E. did not wait for this Court's decision on appeal before it elected to enforce Judge Caldwell's order. Consequently, Hasse's video lottery machines were removed from F.O.E.'s premises before this Court decided the appeal. Judge Caldwell's termination decision was ultimately reversed by this Court in *Eagles I.* Circuit Court Judge Glen Eng subsequently ordered that Hasse be allowed to resume his video lottery operation at F.O.E.'s premises effective June 1, 2001 through September 5, 2001.[1]

[¶ 6.] In July 2001, Hasse initiated this action for damages for profits lost while his video lottery machines were removed from the premises. After some discovery, Judge Eng granted summary judgment in favor of F.O.E. Judge Eng reasoned that "[t]here was never a stay granted or requested [by Hasse] and any alleged damage is a result of [F.O.E.'s reliance upon] a legal court order and therefore there are no recoverable damages." Hasse appeals that ruling. Although the parties have stated the issue in various ways, we believe the issue is:

> Whether a party who acts upon a court order that is subsequently reversed on appeal, must compensate the other party for losses sustained as a result of the enforcement of the erroneous order.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review for the grant or denial of summary judgments is well settled.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Braun v. New Hope Township,* 2002 SD 67, ¶ 8, 646 N.W.2d 737, 739 (quoting *South Dakota State Cement Plant Commission v. Wausau Underwriters Ins. Co.,* 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01) (bracketed portions in original). In this case we must determine whether the circuit court correctly applied the law governing liability for actions taken in reliance upon a court order that is reversed on appeal.

## DECISION

[¶ 8.] The order at issue was issued in a declaratory judgment action. SDCL §§ 21–24–1 and 21–24–3 authorize declaratory actions to determine the rights of parties to a contract.[2] Like other judg-

---

1. The circuit court used June 1, 2001 because that was the date F.O.E.'s subsequent lease with a replacement video lottery vendor ended. The September 5, 2001 date was used because Hasse's lease would naturally terminate on September 6, 2001.

2. SDCL 21–24–1 provides:
   Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief iş or could be claimed. No action or proceeding shall be open to objection on the ground that a

ments, declaratory judgments are subject to appeal. SDCL 21–24–13.[3] Nevertheless, because declaratory judgments have "the force and effect of a final judgment or decree," a party can act on that judgment while the decision is pending appeal. *See Aune v. B–Y Water District,* 505 N.W.2d 761, 764 (S.D.1993) (appeal by a judgment debtor did not stay the execution of the judgment where no supersedeas bond was filed).

■ [¶ 9.] The question then, is what are the consequences of acting on a judgment that is subsequently reversed on appeal. Generally, reversed judgments are null and void and are treated as if the lower court never granted the reversed ruling.

> Focusing on the relevant rules of appellate procedure, it is well-established that a "judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed.'"... "[t]o 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.'"
>
> . . .
>
> "The mandate of this court ordering a reversal of a judgment without other direction nullifies the judgment, findings of facts, and conclusions of law, and leaves the case standing as if no judgment or decree had ever been entered."

*Gluscic v. Avera St. Luke's,* 2002 SD 93, ¶¶ 17, 20, 649 N.W.2d 916, 920 (internal citations omitted).

■ [¶ 10.] Because a reversal leaves the case standing as if no judgment had been entered, the prevailing party at trial incurs liability for restitution to the opposing party if the former executes on a judgment that is reversed on appeal.

> "[U]pon the reversal of a judgment, the law raises an obligation on the part of the party who received benefits from its enforcement to restore those benefits to the adverse party." This authority makes clear that one who executes on a judgment during the pendency of an appeal of the judgment does so at his own risk. *If [that party] obtains benefits from the execution and the judgment is subsequently reversed, those benefits must then be restored to the adverse party.*

*Aune,* 505 N.W.2d at 764–765 (emphasis added). *See also Gluscic,* 2002 SD 93, ¶ 21, 649 N.W.2d at 920; *Wasserburger v. Consolidated Management Corp.,* 502 N.W.2d 256, 260 (S.D.1993); *Janssen v. Tusha,* 67 S.D. 597, 297 N.W. 119, 120 (S.D.1941); *Pendergast v. Muns,* 59 S.D. 135, 238 N.W. 344, 347 (S.D.1931).

■ [¶ 11.] The party prevailing at trial may, however, avoid liability in these situations. To do so, a party prevailing at trial must wait until after the time to appeal has lapsed before acting on the judgment. As we cautioned in *Wasserburger:*

---

declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.
SDCL 21–24–3 provides:
Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or fran-

chise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

3. SDCL 21–24–13 provides:

All orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees.

Although [the trial judge] ordered Hughes to release the funds to RIA, under SDCL 15–26A–3, Wasserburger had the right to appeal the order. In order to protect himself, prior to releasing the funds, Hughes should have provided Wasserburger with written notice of the filing of the order. If, thereafter, Wasserburger failed to appeal within sixty days, the time for appeal would have expired and Hughes could have released the funds to RIA without incurring personal liability.

*Wasserburger,* 502 N.W.2d at 260 (further citations omitted). Thus, absent use of this precaution, a prevailing party at trial generally bears the risk of relying on a decision that is reversed on appeal.

[¶ 12.] An application of these principles to this case subjects the F.O.E. to liability for relying on the reversed judgment. Here, the F.O.E. relied on Judge Caldwell's termination decision, and Hasse's video lottery machines were removed. However, that decision was appealed, and we ultimately held that the lease was not terminated. Therefore, F.O.E. wrongfully excluded Hasse from the premises. Because F.O.E. was liable for its reliance on the declaratory judgment while the appeal was pending, it must now restore the benefits Hasse lost when his machines were improperly removed.

[¶ 13.] F.O.E., however, argues that they "acted upon the [former] trial court's

determination and should not be penalized for resorting to the judicial process and relying on the determination of [Judge Caldwell's decision]." F.O.E. specifically relies on two cases in which courts have held that a party relying on an injunction cannot be held liable if the order is later reversed on appeal. *See Dickey v. Rosso,* 23 Cal.App.3d 493, 100 Cal.Rptr. 358 (1972); *Steller v. Thomas,* 232 Minn. 275, 45 N.W.2d 537 (1950).

[¶ 14.] However, F.O.E.'s reliance on these cases is misplaced. Both *Dickey* and *Steller* were injunction actions in which the party prevailing on appeal sought damages *in addition* to the bond or undertaking that was required to obtain the initial injunctive relief. Those cases seeking relief in addition to the bond are materially different than this single claim for damages. Because the party seeking an injunction must generally post a bond to compensate the enjoined party should an appellate court determine that the injunctive relief was improvidently granted,[4] the party seeking an injunction has already undertaken liability for improvidently issued court orders. Injunction cases are also distinguishable because when a court grants an injunction, the order *requires* action or inaction immediately, and the enjoined party *must* comply with the trial court's injunction at the time it so orders. In other actions, however, and particularly in declaratory actions, the party prevailing at trial has the option to execute and en-

---

4.  SDCL 15–6–65(c) provides:

    Where no provision is made by statute for security on a preliminary injunction or temporary restraining order, the court shall require a written undertaking on the part of the applicant with or without sureties in such sum as the court deems proper, to the effect that the applicant will pay to the party enjoined such costs and damages not exceeding the amount to be specified, as he

    may sustain by reason of the preliminary injunction or temporary restraining order, if the court finally decides that the applicant was not entitled thereto. The damages may be ascertained by reference or otherwise as the court shall direct. No such security shall be required of the state of South Dakota or of an officer or agency thereof.

force the trial court order immediately, or it may wait until the appellate process is completed. For these reasons, F.O.E.'s cases are distinguishable.

[¶ 15.] We reverse and remand to reinstate Hasse's action for damages.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.