2004 SD 4

**Jennifer CANTALOPE and James Cantalope, Plaintiffs and Appellees,**

v.

**VETERANS OF FOREIGN WARS CLUB ("VFW") OF EUREKA, South Dakota, Defendant and Appellant.**

Nos. 22710, 22716.

Supreme Court of South Dakota.

Argued Oct. 8, 2003.

Decided Jan. 07, 2004.

Rehearing Denied Feb. 17, 2004

ing against the VFW in circuit court since VFW carried no worker's compensation insurance. The circuit court found in favor of Jennifer and awarded her temporary total disability and permanent partial disability benefits. Jennifer and James also brought suit to recover for overtime hours they claim to have worked during their VFW employment. The circuit court ruled against Cantalopes finding that VFW did not have constructive knowledge of the overtime hours. VFW appeals the worker's compensation award; Cantalopes appeal the trial court's ruling on the overtime claims. We affirm in part, reverse in part and remand.

### FACTS AND PROCEDURAL BACKGROUND

[¶ 2.] VFW hired Cantalopes for "the managing job" for 80 hours a week.[1] It was expected that one of them would be on the premises during all business hours. Jennifer's worker's compensation claim is based upon an incident on the evening of September 19, 1997, when she and James were both at VFW serving customers. Customers were allowed to smoke in the establishment; however, in addition to cigarette smoke that evening there was a heavy concentration of cigar smoke in the area where Jennifer was working. Jennifer, who had been asthmatic since grade school, experienced an abrupt attack of constricted breathing and the inability to swallow. She was taken to an emergency room and hospitalized overnight. The physician diagnosed her condition as subcutaneous pneumomediastinum which is air rupturing into body tissues. Upon release her physician ordered eight weeks of bedrest. Jennifer never returned to her

Kimberly Dorsett, Harvey Oliver, Aberdeen, South Dakota, Attorneys for plaintiffs and appellees.

Drew C. Johnson, Aberdeen, South Dakota, Attorney for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Jennifer, employed with her husband James (Cantalopes) as bartenders/managers of the Veterans of Foreign Wars (VFW) facility, had an asthmatic episode at work resulting in injury to her lungs. Jennifer sought worker's compensation benefits for her injury by proceeding

---

1. The agreement was written in the VFW Board notes dated March 26, 1996. Specifically the note states, "Jim & Jennifer want to take the managing job as a couple with extra- additional help *only* on special evenings or functions.... *No days off* except for emergencies." (emphasis in original).

employment with VFW.[2] Additionally, Cantalopes claim that VFW owes them wages under state and federal wage and hour laws for overtime pay.

[¶ 3.] Several pre-trial motions were filed. Initially the Cantalopes moved for partial summary judgment to resolve the issue of whether Jennifer's injury was work related.[3] VFW argued that Jennifer committed willful misconduct which precluded her eligibility for worker's compensation. The court granted the Cantalopes' motion for partial summary judgment ruling that Jennifer had suffered a work related injury. Jennifer, then moved for summary judgment on her worker's compensation damages. Additionally, the Cantalopes moved for partial summary judgment on their claims for wage and hour violations. The court denied Cantalopes' motions finding there were genuine issues of material fact. Further, the trial court ruled that the VFW had no right to a jury trial for the worker's compensation issues. A court trial was held to determine the issue of Jennifer's damages, and Jennifer and James' wage and hour claims under the Fair Labor Standards Act (FLSA). Both parties appeal raising the following issues:

## ISSUES

1. **Whether Jennifer was precluded from receiving worker's compensation benefits.**

2. **Whether Jennifer was entitled to temporary total disability and permanent partial disability benefits.**

3. **Whether the VFW was entitled to a jury trial on the worker's compensation claim.**

4. **Whether the trial court had sufficient evidence to remove the Cantalopes' federal and state wage and hour claims.**

## DECISION

1. **Whether Jennifer was precluded from receiving worker's compensation benefits.**

[¶ 4.] The issue before the Court on summary judgment was whether Jennifer was precluded from worker's compensation benefits because of willful misconduct. Our standard of review with summary judgment has long been established. Viewing the evidence in the light most favorable to the nonmoving party, we must determine if a genuine issue of material facts exists and if not, whether the party is entitled to judgment on the merits as a matter of law. *Hasse v. Fraternal Order of Eagles* # 2421, 2003 SD 23, ¶ 7, 658 N.W.2d 410, 412. VFW argued two points relating to willful misconduct: (1) that Jennifer's decision to work in a smoke-filled environment with her asthmatic condition constituted willful misconduct, and (2) that Jennifer self-inflicted her injury by smoking cigarettes.

[¶ 5.] An employee's willful misconduct can preclude the employee from receiving worker's compensation benefits under certain circumstances. SDCL 62–4–37. The statute provides:

> No compensation shall be allowed for any injury or death due to the employees willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required

---

**2.** James quit employment approximately two months after the incident.

**3.** VFW initially alleged that the Cantalopes were independent contractors but conceded at the hearing they were employees.

by statute. The burden of proof under this section shall be on the defendant employer.

*Id.*

[¶ 6.] In applying the statute, this Court has defined willful misconduct as "something more than ordinary negligence but less than deliberate or intentional conduct. Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable,* as distinguished from a *possible* (ordinary negligence), result of such conduct." *Fenner v. Trimac Transp., Inc.,* 1996 SD 121, ¶ 9, 554 N.W.2d 485, 487 (citations omitted). "[M]ere negligence ... however great, does not constitute willful misconduct ... and will not defeat recovery of compensation by the employee or his dependents." *Id.* at ¶ 30, 554 N.W.2d at 493 (Justices Konenkamp and Sabers dissenting) (citations omitted).

[¶ 7.] VFW argues Jennifer engaged in willful misconduct because she knowingly worked in a smoke-filled environment even though she understood and appreciated it could exacerbate her asthma. VFW relies on *Fenner,* in which this Court affirmed the denial of worker's compensation benefits to an employee who intentionally and deliberately disregarded his physical limitations and physician's orders. VFW argues the same reasoning should apply to the present case.

[¶ 8.] The evidence before the trial court was that Dr. Luzier had treated Jennifer for asthma since childhood. Dr. Luzier was board certified in pediatrics in 1981 and then became a board certified allergist, immunologist and asthma specialist in 1983. Dr. Luzier testified that the severity of Jennifer's asthma ranged from moderate to severe and was managed with medication. In the months preceding her injury, she had gained control of her asthma which consequently stabilized her air passages. Nevertheless, various triggers such as pollen, cold air, and smoke could destabilize her. She had been able to tolerate the smoke environment at the VFW prior to the incident. Jennifer's physician of 10 years submitted an affidavit in which he stated that she could not have foreseen or predicted her asthma attack on September 19, 1997. Dr. Luzier stated:

> Plaintiff Jennifer did not have a type of asthma such that her presence in a bar or around smokers would make her sick or have an attack every time. It is therefore my expert opinion that the particular asthma attack that occurred on the night in question was unpredictable and unforeseeable and therefore not something that Plaintiff Jennifer could have predicted or expected.... [I]t was something she had not encountered prior to the night in question.

Although VFW challenged his affidavit during deposition, Dr. Luzier explained his assertions and reiterated his position. Also, he stated during deposition, "I did not advise her to not work in the bar." VFW presented no expert or other evidence which controverted the physician's testimony.

[¶ 9.] The evidence submitted to the trial court in the form of affidavits, depositions and other records shows that Jennifer had no "conscious realization" that her injury was *"probable."* *Id.* at ¶ 9, 554 N.W.2d at 487 (citations omitted). Her physician stated that she had her asthma controlled and had been working at the bar for over a year without incident. Additionally, she was not under physician orders to refrain from working in any particular environment. Given these facts, even considered in the light most favorable to VFW, Jennifer's conduct does "not compare to the deliberate actions required under the statute.... It is only in those

instances that constitute serious, deliberate, and intentional misconduct, that the bar to benefits provided by SDCL 62–4–37 should be applied." *Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 532 (S.D.1992). As we stated in *Harden v. South Dakota Credit Union League, Inc.* "[r]ecovery may not be denied merely because [employee] had a prior history of back problems." 87 S.D. 433, 436, 209 N.W.2d 665, 666 (1973). The same can be said here that Jennifer cannot be denied benefits merely because she has a history of asthma. Moreover, this Court stated long ago "[i]n so far as the pre-existing condition is concerned we must take the employee as we find him." *Elmstrand v. G G Rug Furniture Co.,* 77 S.D. 152, 155, 87 N.W.2d 606, 608 (1958). The trial court did not err in ruling as a matter of law that Jennifer's choice of employment with VFW does not bar her from benefits.

■■■ [¶ 10.] VFW next argues Jennifer's injury was intentionally self-inflicted because she allegedly smoked cigarettes. Jennifer testified that she had not smoked. VFW presented affidavits from three of Jennifer's neighbors who claimed they saw Jennifer smoking prior to the episode in question. VFW claims that this is a disputed material fact and should not have been disposed of on summary judgment. Nevertheless, the physician in his deposition opined that regardless of whether Jennifer was smoking, the major contributing cause of the injury was the environment at work.[4] The deposition testimony states:

> PLAINTIFF'S COUNSEL: Okay. I think I've already asked this, but let's

assume there is testimony and I ·don't know this to be true, but I got it from [defense counsel's] question that there may be someone who is going to say that Jennifer was smoking either that day or shortly around the time that she sustained the injury and my question again goes that even if that fact were true, assuming that to be true, would it still be your opinion that the environment at work was a *major contributing cause* of the injury? (emphasis added).

PHYSICIAN: Yes.

VFW's argument fails because Jennifer's smoking was not a material fact. Her physician's uncontroverted opinion was that the work environment was a major contributing cause of Jennifer's injury even assuming Jennifer had smoked. In a similar case, we held that even though the employee's smoking was found to have caused chronic obstructive pulmonary disease, which required her to use a steroid that causes osteoporosis, the claimant was not barred from benefits when her health problems prevented her from working. *Brown v. Douglas School Dist.,* 2002 SD 92, ¶ 19, 650 N.W.2d 264, 270. An employee does "not have to prove that the work injury was 'the' major contributing cause, only that it was 'a' major contributing cause." *Id.* at ¶ 23, 650 N.W.2d at 271. Jennifer's injury happened while at work at VFW. Her physician stated that the environment at work was a major contributing factor. VFW offered no evidence to contradict her physician's opinion. Because there is no genuine issue of material fact, summary judgment was appropriate.

---

4. Injury as defined by SDCL 62–1–1(7) states in part:

> An injury is compensable only if it is established by medical evidence, subject to the following conditions:
> (b) If the injury combines with a preexisting disease or condition to cause or prolong dis-

*ability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment.*
*Id.* (emphasis added).

■ [¶ 11.] VFW also claims that Jennifer should be disqualified from receiving worker's compensation benefits under SDCL 62-7-40 because she allegedly lied about smoking. SDCL 62-7-40 provides that in worker's compensation proceedings "if the finder of fact determines that any person testifying in the proceeding has knowingly sworn falsely to any material fact in the proceeding, then the finder of fact may reject all of the testimony of that witness." *Id.* This statute was added to the worker compensation statutes in 1995 and mirrors the maxim *falsus in uno, falsus in omnibus.*[5] We have discussed the propriety of instructing a jury on this maxim and have held it appropriate in certain cases. *State v. Rosales,* 302 N.W.2d 804, 806 (S.D.1981).[6] The statute (as does the jury instruction) allows the trier of fact to reject testimony of a witness if that witness has knowingly sworn falsely to any material fact. *Id.* at 806. Here, the trial judge had the discretion to reject testimony but was not required to do so. VFW relies on *Hausauer v. N.D. Workers*

*Comp. Bureau,* 572 N.W.2d 426 (N.D. 1997), where the court found that claimant had made a willful, false statement sufficiently material to disqualify him from receiving benefits. VFW asserts the North Dakota statute applied in *Hausauer* is similar to SDCL 62-7-40.[7] We fail to see the similarity. The North Dakota statute applied in *Hausauer* is a criminal statute which makes it a misdemeanor for a claimant to file a false claim or to make a false statement to obtain benefits. It is dissimilar to SDCL 62-7-40 which merely allows the judge to reject all of the testimony of a witness who perjures himself by swearing falsely to a material fact. We affirm the trial court's ruling.

**2. Whether Jennifer was entitled to temporary total disability and permanent partial disability benefits.**

**a. Entitlement to Temporary Total Disability**

■ [¶ 12.] We review the trial court's findings of fact under the clearly erroneous standard. *Capital Motors, LLC*

---

**5.** See SD Pattern Jury Instructions 2-04 (civil).

**6.** See W.W. Allen, Annotation, *Modern view as to propriety and correctness of instructions referable to maxim falsus in uno, falsus in omnibus,* 4 A.L.R.2d 1077 (1949).

**7.** NDCC 65-05-33 Filing false claim or false statement—Penalty.

1. A person who claims benefits or payment for services under this title ... is guilty of a class A misdemeanor if the person ... does any one or more of the following:
a. Willfully files a false claim or makes a false statement in an attempt to secure payment of benefits or payment for services.
b. Willfully misrepresents that person's physical condition, including deceptive conduct which misrepresents that person's physical ability.
c. Has a claim for disability benefits that has been accepted by the bureau and willfully fails to notify the bureau of:

(1) Work or other activities as required under subsection 3 of section 65-05-08;
(2) The receipt of income from work; or
(3) An increase in income from work.
2. If any of the acts in subsection 1 are committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or payment for services, the offense is a class C felony.
3. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65-05-29 and shall forfeit any additional benefits relative to that injury.
4. For purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, X-ray, test results, or other evidence of loss, injury, or expense.

*v. Schied,* 2003 SD 33, ¶ 10, 660 N.W.2d 242, 245. When reviewing findings, we will reverse, only if, after careful review of the entire record, we are definitely and firmly convinced a mistake has been made. *St. Luke's Midland Reg. Med. Center v. Kennedy,* 2002 SD 137, 138, 653 N.W.2d 880, 883.

[¶ 13.] At trial, Jennifer's physician was asked if he advised her not to return to work after the injury and he said yes. When asked about the length of time Jennifer should not work, he responded, "[t]urned out to be a 2–month period of time after follow-up." He continued, "... this is a much more significant injury than just having an asthma attack because of the collection of air, you have to be very comfortable that that's healed completely and that she's not at excessive risk when she goes back to a job environment of having this reoccur. So she has to have a lot of airway stability, and that healing process usually takes 2 to 3 months to take place." The physicians testimony was uncontroverted and therefore the calculations accepted by the trial court based on SDCL 62–4–3 are not clearly erroneous.[8] The award of temporary total disability is affirmed.

**b. Entitlement to Permanent Partial Disability**

[¶ 14.] Jennifer claimed permanent partial disability under SDCL 62–4–6(24) which allows compensation for per-manent partial disability. In order to compute the statutory compensation allowed, a claimant must be evaluated and given an impairment rating. Such rating shall be expressed as a percentage to the affected body part, using the Guides to the Evaluation of Permanent Impairment established by the American Medical Association, fourth edition, June 1993 (Guides). SDCL 62–1–1.2. There is a disclaimer in the Guides explaining that not all questions can be directly answered because of the variables involved in medical practice. Guides at 3. Furthermore, the AMA Guides are not intended to establish a rigid formula, though where use of the AMA Guides is required by statute, a deviation must be justified by competent medical evidence and be consistent with the specific dictates and general purpose of the Guides. AMJUR Workers 406. Here, Jennifer's physician admitted the Guides do not address her specific injury. However, the Guides offer a means to assess impairment.

[¶ 15.] Whether the statutory requirements of SDCL 62–1–1.2 have been satisfied is a legal question, which we review de novo. SDCL 62–1–1.2 mandates that the AMA Guides be used to calculate the percent of the impairment to the whole person. Other states also statutorily specify the use of the AMA Guides for impairment assessment.[9] As this Court has not

---

8. VFW argues that a full month's compensation was paid even after Jennifer's injury and therefore she should not recover the amount that overlaps. James however worked after Jennifer's injury and because he was working Jennifer's hours as well as his own, the salary paid was for actual work provided by James.

9. *See* Alaska Stat. § 23.30, 190 (1990); Ariz. Rev.Stat.Ann. § 23–1065(C) (1995); Colo.Rev. Stat. § 8–42–107(8)(c) (Cum.Supp. 1995); Ga.Code Ann. § 34–9–1(5) (1994); Ky.Rev. Stat.Ann. § 342.730(1)(c) (Michie/Bobbs–Mer-rill Cum.Supp. 1994); La.Rev.Stat.Ann. § 23–1221(4)(q) (West Cum.Supp. 1996); Me.Rev. Stat.Ann. tit. 39–A, § 153(8) (West Cum. Supp. 1996); Mass.Ann.Laws. ch. 152, § 35 (Law.Co-op. Cum.Supp. 1996); Mont.Code Ann. § 39–71–703(1)(b)(ii) (1995); Nev.Rev. Stat. § 616C, 490(2) (1995); NH.Rev.Stat. Ann. § 281–A:31–a (Cum.Supp. 1995); N.D.Cent. Code § 65–01–02(26)(1995); Okla. Stat.Ann. tit. 85, § 3(11) (West 1992); RI. Gen.Laws § 28–33–18(c)(1995); Tenn.Code Ann. § 50–6–241(a)(1)(Supp. 1995).

reviewed this statute under the circumstances presented here, we will consider how other states have dealt with the Guides. In New Hampshire, the court held that if a physician, exercising competent professional skill and judgment, finds that the recommended procedures in the *AMA Guides* are inapplicable to estimate impairment, the physician may use other methods not otherwise prohibited by the *AMA Guides*.[10] *In re Rainville*, 732 A.2d 406, 413, 143 N.H. 624, 632 (1999). Similarly, in New Mexico, the court noted, [t]he AMA Guide is a general framework, requiring flexibility in its application. *Madrid v. St. Joseph Hosp.*, 928 P.2d 250, 258, 122 N.M. 524, 532, (1996). While the AMA Guide was intended to help standardize the evaluation of a workers impairment, it was not intended to establish a rigid formula to be followed in determining the percentage of a workers impairment. *Id.*

[¶ 16.] Here, the physician used the Guides, Jennifer's medical history, and his professional experience to determine Jennifer had a 10–15% impairment rating. And while the Guides do not contain ratings on Jennifer's specific injury, they do contain methods for evaluating respiratory injuries. The physician further explained that while under one of the Guides rating tests Jennifer would show no impairment, she nevertheless has a permanent injury to her lung, greatly increasing her risk to redevelop the condition and increasing her susceptibility to pneumomediastinum or pneumothorax. Consequently, at trial, the physician testified that Jennifer had a 10 to 15 percent whole person impairment under that portion of the Guides that allow independent physician assessment when the specific injury is not covered. Although we acknowledge that the physi-

cians methodology was subjected to substantial critical review in his deposition, that deposition was incorporated into the trial record, and the trial court ultimately found that a 10 to 15 percent impairment did exist. Whether and to what extent an alternative method is proper, credible, or permissible under the *AMA Guides* are questions of fact to be decided by the board. *Rainville*, 732 A.2d at 413, 143 N.H. at 632 (citing *City of Aurora v. Vaughn*, 824 P.2d 825, 827 (Colo.Ct.App. 1991) (as trier of fact, agency entitled to rely on expert testimony supporting deviation from *AMA Guides*)). Here, this matter was tried before the circuit court, and that trier of fact found the physicians alternative methodology credible. Considering the totality of the evidence, we do not conclude that the trial courts finding was clearly erroneous.

[¶ 17.] Where the legislature has expressly incorporated a private organizations standards into our statutes and where those standards expressly allow for professional discretion in reaching a determination, such discretion, if supported by competent medical evidence and if consistent with the general purpose of the AMA Guides, satisfies the statutory requirements of SDCL 62–1–1.2.

**3. Whether the VFW was entitled to a jury trial on the worker's compensation claim.**

 [¶ 18.] When an employer is not covered by workers compensation, SDCL 62–3–11 applies:

> Any employee, who is employed by an employer who is deemed not to operate under [workers compensation], may elect to proceed against the employer in any action at law to recover damages

**10.** See also *Steven Babitsky, ET AL., Understanding the AMA Guides in Workers Compensation* 1.12 (3d ed. 2002).

... or may elect to proceed against the employer in circuit court under the provisions of [workers compensation], as if the employer had elected to operate thereunder ... and the measure of benefits shall be that provided under 62–4–1 plus twice the amount of other compensation allowable ...

*Id.*

[¶ 19.] Jennifer chose to bring this action under workers compensation provisions. Although the statute places the action in circuit court instead of the Department of Labor, the action is to progress as if the employer had elected to operate under workers compensation. As there is no right to a jury trial in an administrative workers compensation proceeding, there is no right to a jury trial in a circuit court proceeding based on SDCL 62–3–11. We affirm the trial courts denial of a jury trial.

**4. Whether the trial court had sufficient evidence to remove the Cantalopes' federal and state wage and hour claims.**

**a. Actual/Constructive Knowledge**

■ [¶ 20.] If employees work overtime and their employer has actual or constructive knowledge of it, employees must be compensated. The existence of actual or constructive knowledge is a question of fact. *Graham v. Babinski Properties,* 1997 SD 39, ¶ 13, 562 N.W.2d 395, 398. The Cantalopes argue that actual or constructive knowledge is a fact for a jury to decide. The trial court found that the employer did not have actual or constructive knowledge of the Cantalopes each working in excess of 40 hours per week. The Cantalopes appeal the trial courts ruling and request that the trial courts order be vacated.

**b. Exemptions to Wage and Hour Claims**

■ [¶ 21.] The Cantalopes wage and hour claims are based in both state and federal law. The Cantalopes were hired to work an eighty hour week between them. VFW is open eighty hours per week. The Cantalopes claim that when the VFW sponsored private events during times the establishment would otherwise be closed, they consequently worked substantial overtime hours. VFW argued that the Cantalopes position was exempt from overtime compensation because they were employed in a management position and were therefore administrative employees. Certain administrative employees are exempt from the overtime provision. The trial court did not rule on the Cantalopes employee status. Rather, the trial court ruled that VFW did not have actual or constructive notice of the Cantalopes overtime and therefore removed the issue from a jury trial. Cantalopes request that the trial court rule whether their employment status exempted them from overtime compensation. Further, they point out that if they are exempt, then a trial as to VFWs knowledge of overtime would not be necessary. If their position is not exempt, they request that a jury decide the issue of overtime. Generally, the right to a jury trial exists in an FLSA [Fair Labor Standards Act] suit to recover minimum wages or overtime pay. 48A Am.Jur.2d *Labor and Labor Relations* 4620 (2003). Not all FLSA issues can be tried to a jury because FLSA provides that the court award any liquidated damages and attorneys fees and costs. *Id.*

[¶ 22.] We remand for the trial court to determine if the Cantalopes management position was overtime exempt under the Fair Labor Standards Act.[11] If the court

---

11. The Code of Federal Regulations and various cases have formulated tests to determine

finds that the position was exempt, then no jury trial would be necessary. If, on the other hand, the trial court determines that the position is not exempt, the question of whether VFW had actual or constructive knowledge of the Cantalopes overtime should proceed in a jury trial because of the disputed material facts on this issue.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 24.] SABERS, Justice, concurs in part and dissents in part.

SABERS, Justice (dissenting in parts 1 and 2 and concurring in parts 3 and 4).

### 1. Issue 1.

[¶ 25.] If this result had been reached after a properly noticed court trial, with findings of fact and conclusions of law as required, I would be inclined to concur. However, this result was reached improperly by summary judgment without findings of fact and conclusions of law. This is neither proper nor permissible in the face of genuine issues of material fact and this case must be reversed on Issue 1.

[¶ 26.] There are genuine issues of material fact in this case concerning willful misconduct and self-inflicted injury resulting from the inhalation of smoke, working in the municipal bar and inhaling cigar smoke. Even the physician's testimony might have been different if he had known she had been smoking or that she was working in the bar.

[¶ 27.] No one is entitled to summary judgment unless they can show that there were no genuine issues of material fact. *State Dept. of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989) (citing *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968))

if the employee's position is exempt.

(explaining the principles of summary judgment). One of the most important principles underlying summary judgment is that it is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant. *Id.* Therefore, Issue 1 should be reversed and remanded for a trial.

### 2. Issue 2.

[¶ 28.] Accordingly we should remand Issue 2 as it is dependent upon the facts to be properly determined in a trial.

### 3. Issue 3.

[¶ 29.] I agree with the majority opinion that VFW is not entitled to a jury trial on the worker's compensation claim.

### 4. Issue 4.

[¶ 30.] I agree with the majority opinion on Issue 4 and would remand on that basis.